**In re Gary C. ROCKEFELLER and Mary E. Rockefeller, Debtors.**

**Bankruptcy No. 88–09689.**

United States Bankruptcy Court, E.D. Michigan, N.D.

June 15, 1989.

Steven J. Sattler, Sebewaing, Mich., for debtor.

Thomas W. McDonald, Saginaw, Mich., Chapter 12 Trustee.

George E. Jacobs, Bay City, Mich., for trustee.

David J. Fisher, Saginaw, Mich., for First of America Bank.

Randall L. Frank, Bay City, Mich., for American Home Bank.

## AMENDED MEMORANDUM OPINION ON CONFIRMATION OF DEBTORS' PLAN

ARTHUR J. SPECTOR, Chief Judge.

Gary C. and Mary E. Rockefeller filed their joint petition for relief under Chapter 12 (11 U.S.C. § 1201 *et seq.*) on September 15, 1988. The debtors filed their first amended plan of reorganization on February 17, 1989, after I denied confirmation of their original plan on January 19, 1989. The trustee[1] has objected to confirmation of the debtors' plan of reorganization on the ground that it fails to satisfy the best interests of creditors test. 11 U.S.C. § 1225(a)(4). The objection is based on the trustee's assertion that much of the property the debtors claimed as exempt is not exempt and so would be available for distribution to unsecured creditors if this case had been filed under Chapter 7 instead. *See In re Kelley,* 31 B.R. 786 (Bankr.N.D. Ohio 1983); 5 *Collier on Bankruptcy,* ¶ 1300.90, 1325.05 (15th ed. 1988), (discussing § 1325(a)(4)).[2] From the testimony adduced at the hearing conducted on May 5,

---

1. First of America Bank–Frankenmuth and American Home Bank filed substantially the same objections. The trustee, however, carried the ball at the hearing, so this opinion will refer solely to the trustee as the objecting party.

2. "In interpreting the provisions of Chapter 12, courts often turned to Chapter 13 for guidance because Chapter 12 was closely modeled after the existing Chapter 13...." *In re Nielsen,* 86 B.R. 177, 178 (Bankr.E.D.Mo.1988); *In re Kjerulf,* 82 B.R. 123, 127 (Bankr.D.Ore.1987).

1989, from the trustee's report filed on January 19, 1989, and from the records of this case, it appears that the following facts are not in dispute.

Mr. Rockefeller lost his left leg in a farming accident on or about December 12, 1985, when he was approximately 42 years old. Until that time, he had actively farmed land in the Owendale, Michigan area. The accident left him permanently partially disabled. On July 25, 1986, the Rockefellers brought suit against the entities they felt were responsible for their losses, seeking compensation for Mr. Rockefeller's medical expenses, pain and suffering and loss of earnings and Mrs. Rockefeller's loss of Mr. Rockefeller's society and companionship. On May 31, 1988, the Rockefellers signed a release and dismissed their action "in consideration of $165,000, and the mutual covenants herein contained and incorporated by reference to the agreement to structure settlement ..." (Exhibit B). That settlement provided for the purchase of an annuity, which contained a schedule of payments of $2,500 per month from June 12, 1988 until June, 1998; $3,000 per month from June, 1998 to June, 2008; and $3,500 per month thereafter as long as Mr. Rockefeller lived. Apparently, all but $5,000 of the $165,000 cash paid by the defendants was disbursed to the Rockefellers' attorneys; the Rockefellers got the $5,000 and the annuity. The trustee and the debtors stipulated that the present value of the annuity is $415,000.

■ The debtors claimed the entire annuity as exempt property. First, each of the debtors claimed $7,500 of its value exempt as "a payment, not to exceed $7,500, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent ...". 11 U.S.C. § 522(d)(11)(D).

They claimed the balance of the annuity exempt as "a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(d)(11)(E). The trustee conceded that Mr. Rockefeller had a valid claim of exemption under § 522(d)(11)(D) as a leg is indisputably covered by that subsection in the full amount permitted. 3 *Collier on Bankruptcy,* ¶ 522.20 (15th ed. 1989).[3] He did object to Mr. Rockefeller's § 522(d)(11)(E) claim on the ground that not all of it was reasonably necessary for the Rockefellers' support. Both debtors also claim the § 522(d)(2) exemption in a pick-up truck. The trustee objected only to Mrs. Rockefeller's claim since she had no ownership interest in the vehicle.

The only witness at the hearing was Mr. Rockefeller. What follows are my findings of facts and conclusions of law pursuant to Bankruptcy Rule 7052, incorporating F.R. Civ.P. 52.

Mrs. Rockefeller has no right to a § 522(d)(2) exemption of the pick-up truck as she has no ownership interest in it. *In re Lambert,* 10 B.R. 11 (Bankr.N.D.Ind. 1980).

Mr. Rockefeller is not entitled to a § 522(d)(11)(D) exemption as he testified that the entire annuity was in compensation for loss of future earnings. However, Mrs. Rockefeller is entitled to a $7,500 exemption from the value of the annuity as she is the dependent of a person (Mr. Rockefeller) who suffered personal bodily injury (loss of a leg) and Mr. Rockefeller later testified that $7,500 of the annuity was in compensation for personal bodily injury.

Mr. Rockefeller is entitled to a § 522(d)(11)(E) exemption of $353,166.66 of

---

**3.** The trustee also did not object to Mrs. Rockefeller's § 522(d)(11)(D) claim. However, First of America Bank–Frankenmuth did. In its brief in support of its objection to debtors' exemptions, the bank asserted that "Mrs. Rockefeller is clearly not entitled to any exemption under [§ 522(d)(11)(D)]." This was so, apparently, because *she* did not lose her leg, Mr. Rockefeller did. A careful reading of the statute makes it *clear* that Mrs. Rockefeller need not suffer actual physical injury. For her to claim this exemption she must either personally suffer an injury or an individual of whom she is dependent must suffer the injury. She is entitled to this exemption under the latter alternative.

the value of the annuity, but not for the remainder.

### Discussion of the debtors' § 522(d)(11)(D) and (E) Exemptions

■ The debtors argued that there is only one part to the test of what is exempt under § 522(d)(11)(E). They say that the sole question is whether the asset is reasonably necessary for the debtors' support. If it is, then the exemption is appropriately claimed. No examination of the intention of the parties is necessary or appropriate under this reasoning. The trustee, however, argues that this subsection requires a two-part test. He says that only if the court first determines that the asset *is* a payment in compensation of loss of future earnings, (and only to that extent that it is) may the court then decide whether and to what extent it is reasonably necessary for the support of the debtor. I find the trustee's reasoning more persuasive. Therefore, I should examine the intentions of the parties when the settlement was effected to determine whether the annuity was intended as "a payment in compensation of loss of future earnings" or for some other purpose(s). The trustee acknowledges that he has the burden of proof in establishing an objection to a claim of objection. Bankruptcy Rule 4003; *In re Harris*, 50 B.R. 157 (Bankr.E.D.Wis.1985).

Mr. Rockefeller testified that no allocation of the settlement amount among damages for lost earnings, past medical bills, pain and suffering and personal bodily injury was made. He professed no idea of any appropriate allocation either. He nonetheless unequivocally stated that the entire annuity was for the purpose of compensating him for loss of future earnings.

After the proofs were closed, the trustee claimed surprise by this testimony, since Mr. and Mrs. Rockefeller each claimed an exemption of $7,500 of the value of the annuity as a payment on account of personal bodily injury, under § 522(d)(11)(D). The testimony that the entire annuity was meant to compensate him for lost earnings obviously tended to contradict this latter claim, to which the trustee had not previously voiced an objection. However, given the testimony, the trustee did then object to the § 522(d)(11)(D) claim of exemption. The debtors' counsel then recalled Mr. Rockefeller for further testimony. This time, he said $7,500 was for personal bodily injury. The trustee objected to this change of testimony. I, too, reject this crass attempt to manipulate exemptions by doctoring testimony to meet exigencies. However, since exemptions must be liberally construed for the benefit of the debtor, *In re Coleman*, 5 B.R. 76, 79 (Bankr.M.D. Tenn.1980), I have tried to reconcile Mr. Rockefeller's testimony in such a way as to dispel any inference of perjury. I credit Mr. Rockefeller's testimony that none of the value of the annuity was meant to compensate *him* for personal bodily injury. His latter statement, however, can be harmonized with this testimony by assuming that the $7,500 he testified was exempt under § 522(d)(11)(D) was the $7,500 that Mrs. Rockefeller claimed. Therefore, Mrs. Rockefeller is entitled to exempt $7,500 of the value of the annuity under § 522(d)(11)(D) since its payment is on account of personal bodily injury suffered by an individual of whom she is a dependent. Aside from avoiding an inference of perjury, this liberal reading of Mr. Rockefeller's testimony also helps me avoid a most unlikely finding—i.e., that the debtors received nothing at all for the loss of a leg.

■ The factual inquiry under § 522(d)(11)(E) was how much of the annuity is reasonably necessary for the support of the debtor and his family. The only testimony on this issue was Mr. Rockefeller's. He testified that prior to the injury he earned $30,000 per year from farming and that this was the amount even now necessary to support his family. This is consistent with the Chapter 12 family budget filed at the initiation of the case by the debtors. Therefore, I so find.

The debtors project that Mr. Rockefeller will earn $6,000 from farming this year and each year in the foreseeable future. Obviously, his injury has greatly affected his earning capacity. Nonetheless, since the

debtor expects to earn $6,000 per year from his and his family's[4] labor, and $30,000 per year for this and each of the next nine years from the annuity, it is quite clear that the debtor reasonably needs only $24,000 of the $30,000 provided by the annuity in order to support his family and himself. Therefore, it appears that only 80% ($24,000 divided by $30,000) of the value of the annuity is reasonably necessary for the debtors' support.

Starting in 1998, the debtor will be receiving $36,000 per year from the annuity. However, by then, Mr. Rockefeller will be 55 years old and likely even less able to work than now. Furthermore, expenses will undoubtedly rise over that period of time. We will, thus, retain this 80% exemption ratio. This percentage of the value of the annuity from 1998 to 2008 is exempt. When the next step in the annuity is reached in the year 2008, the debtor will be 65 years old. It is not possible that Mr. Rockefeller will be able to farm forever to the extent of 20% of the amount reasonably necessary for the support of himself and his dependents. One may assume that he will retire from active labor at age 65. The trustee had the burden to prove that the value of the annuity for the years 2008 and beyond exceeded the amount reasonably necessary for the debtors' support. He did not do so. Thus, the entire value of the annuity for the years 2008 and beyond is exempt. The parties offered no formula for computing the percentage of the value of the annuity which should be considered non-exempt. I started with the life expectancy tables. Mr. Rockefeller, a 45–year old white male has an expectation of life of 30.0 years, per the United States Life and Death Tables–1982, published in Michigan Compiled Laws Annotated, Cumulative Supplement of Tables, 1988 Pocket Part, p. 17. Since 20% of the value of the annuity for 20 of those 30 years is non-exempt, and the entire annuity is exempt for 10 of the 30 years, the non-exempt amount would be:

$$(\text{PRESENT VALUE OF ENTIRE ANNUITY} - \text{LESS PORTION OTHERWISE EXEMPT}) \times \frac{\text{years of partial non-exempt}}{\text{years of life expected}} \times 20\%$$

OR

$$(\$415,000 - 7,500 = \$407,500) \times \frac{20}{30} \times 20\% = \underline{\$54,333.34} \text{ [VALUE OF ANNUITY NOT EXEMPT]}$$

To this amount, I must add the value of other assets to the extent that they are unencumbered and non-exempt in order to arrive at a total pool of assets available for a hypothetical Chapter 7 trustee. Those assets include the $926.60 of the pick-up truck which may not be claimed exempt by Mrs. Rockefeller.[5] The debtors conceded that they own real estate with a value of $15,776 in excess of all liens, exemptions and reasonably certain costs of Chapter 7 liquidation. Therefore, the total pool of assets available for a Chapter 7 trustee would be $16,702.60 plus the $54,333.34 non-exempt value of the annuity, or a grand total of $71,035.94.

The debtors' plan would fund only approximately $9,000 to be paid to unsecured creditors.[6] This, of course, pales in

---

4. His brother has been helping him without charge.

5. The truck was valued at $11,000, against which Ford Motor Credit Co. has a lien of $8,873.40 and Mr. Rockefeller has a $1,200 exemption, leaving $926.60 equity, which Mrs. Rockefeller tried to claim as exempt.

6. This figure is based entirely on the trustee's computation of the next three years' earnings projected by the debtors. The debtors, who had the burden of proof of establishing that their plan met each of the elements for confirmation of a plan, In re Adam, 92 B.R. 732 (Bankr.E.D. Mich.1988), introduced no evidence, nor even made an offer of proof as to the amount the debtors proposed to pay to unsecured creditors

comparison to the over $70,000 which a Chapter 7 trustee would be able to disburse to unsecured creditors. Indeed, it is even less than the available equity from the debtors' real estate. For this reason, it is abundantly clear that the trustee's objection to confirmation of the debtors' plan must be sustained, as the best interest of creditors test is not met. An order consistent with this opinion will be entered forthwith.

through the plan. However, the amended plan contains a term which states that with respect to unsecured creditors, such payments "shall be made at least monthly, in equal installments of principal and interest ($15,776.00 at 10% over three years, no less than $509.05 per month)". I note that the $15,776 is the exact amount the debtors feel would be available to a Chapter 7 trustee, and not a penny more. The 10% interest factor is obviously to get past the present value of the stream of payments problem.