In re Linda J. MARTINEZ–
WHITFORD, Debtor.

Bankruptcy No. 95–45333–HJB.

United States Bankruptcy Court,
D. Massachusetts.

Aug. 15, 1996.

Joseph B. Collins, Chapter 7 Trustee.

David W. Ostrander, Northampton, MA,
for Debtor.

Edward D. Etheredge, Northampton, MA,
for Hospital.

### *MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

The matters before the Court are: (1) a
"Motion by Debtor to Avoid Judicial Lien of
Cooley Dickinson Hospital Pursuant to
§ 522(f) of the Bankruptcy Code and for
Turnover of Exempt Funds from the Trust-
ee" (the "Motion"), and (2) the "Trustee's
Objection to the Debtor's Claim of Exemp-
tion." By her Motion, Linda ·J. Martinez–
Whitford (the "Debtor") seeks to avoid a
judicial lien of Cooley · Dickinson Hospital
(the "Hospital") on certain insurance pro-
ceeds the Debtor claims as exempt, pursuant
to § 522(d)(11) of the Bankruptcy Code.
The Chapter 7 Trustee, Joseph B. Collins
(the "Trustee"), and the Hospital object to
the Debtor's claim of exemption and to the
avoidance of the Hospital's judicial lien. All
of the parties agreed at the non-evidentiary
hearing held on the Motion and the objec-

tions that the facts necessary to determine the issues at bar were not in material dispute.

## I. FACTS

On July 4, 1993, the Debtor was involved in a serious head-on automobile accident. Following the accident, the Debtor was admitted to and treated at the Hospital for her injuries.

In her affidavit filed in support of her response to the objections to her claim of exemption, the Debtor described her injuries. She recounted that the head-on collision thrust her forward into the windshield. Her head was severely lacerated and she sustained three cracked ribs, seven fractures in her feet and a broken knee cap. At the Hospital, the Debtor underwent two hours of emergency surgery, remained in intensive care for four days and was released only after ten days. From the time of the accident until November, 1995, the Debtor required the use of a wheelchair, a walker, crutches, or a cane in order to move about. She continues to walk with a severe limp, which her doctor has advised her is permanent. In addition, her doctors have also advised the Debtor that the arthritis present in her foot will worsen "to the point that [she] will no longer be able to place weight on [her] foot, thus requiring the use of a brace and a crutch." Debtor's Affidavit at ¶ 12.

The other driver was uninsured. Hospital records reflect that its bill for services rendered to the Debtor total $10,226.70. At the time of her injuries, the Debtor did not have health insurance, but did carry coverage with Plymouth Rock Assurance Corporation ("Plymouth Rock") for, *inter alia,* "Bodily Injury Caused By An Uninsured Auto" with minimum compulsory limits of $15,000 per person and $30,000 per accident (the "Uninsured Coverage").

The Debtor subsequently retained the law firm of Arvanitis, Phelan & Molta, P.C. ("AP & M") to represent her. At some later time, Plymouth Rock agreed to make full payment under the Uninsured coverage and issued a check in the sum of $15,000 made payable to the Debtor and her attorney.[1] The check reflected the following "Payment Explanation": "FULL AND FINAL SETTLEMENT OF ALL BODILY INJURY CLAIMS TH [sic] RESULTED FROM THE LOSS THE [sic] OCCURRED ON OR NEAR JULY 4, 1993 AS PER THE RELEASE APRIL 21, 1994." From this payment, AP & M received the total sum of $5,055.92 as compensation for its services and reimbursement of its expenses. AP & M deposited the remaining sum of $9,944.08 into an account at AP & M, pending resolution of this dispute.[2]

On or about October 27, 1995, the Hospital filed a complaint in the Commonwealth of Massachusetts District Court Department of the Trial Court, Northampton Division, alleging that the Debtor owed the Hospital $10,-226.70 for medical services. The Hospital also sought and obtained an *ex parte* trustee process attachment which was served on AP & M on October 30, 1995. The Debtor filed her petition on November 21, 1995 and claimed an exemption under § 522(d)(11)(D) in the $9,944.08 balance of the insurance proceeds paid under the Uninsured Coverage.

## II. POSITIONS OF THE PARTIES

### A. The Objecting Parties

In objecting to the Debtor's claim of exemption, the Trustee and the Hospital raise essentially the same two arguments.[3] First, the Trustee and the Hospital argue that the Debtor did not suffer the type of "personal bodily injury" that would entitle her to claim an exemption under § 522(d)(11)(D). They

---

1. Plymouth Rock also made a payment of $8,000 to the Debtor on account of her "Personal Injury Protection" ("PIP") coverage.

2. The record is unclear as to whether the funds still reside with AP & M or whether they have been turned over to the Trustee.

3. In her brief, the Debtor argues that the Hospital failed to file timely its objection to her claim of exemption, and that, therefore, the Court should not consider its objection. Because the Hospital and the Trustee raise the same arguments, the Court need not decide the issue of timeliness.

note that the legislative history of that provision reflects a design to cover payments in compensation of actual bodily injury "such as the loss of a limb."[4] The Trustee and Hospital maintain that the Debtor did not suffer the kind of bodily injury contemplated by that description. Specifically, the Trustee argues that "the phrase 'personal bodily injury' should be interpreted to cover only payments in compensation for a loss of a body part or the effective use of a body part as compared to the Debtor's use of that part prior to the injury." The Hospital argues that while "the Debtor may have suffered some long lasting effects of her injury," she did not suffer "as serious an injury" as Congress intended to be within the scope of the section 522(d)(11)(D) exemption.

Second, the Trustee and the Hospital argue that § 522(d)(11)(D) of the Code is intended to provide debtors an exemption only for settlement or judgment proceeds that are paid by a *tortfeasor or by the tortfeasor's insurer.* The Trustee and the Hospital contend that because the funds the Debtor seeks to exempt came from the Debtor's own insurer they are "on account of a contractual obligation and not on account of personal bodily injury." For this reason, they argue that § 522(d)(11)(D) does not permit the Debtor to exempt those funds. The Hospital finds support for this argument in the nature of a statutory lien provided for hospitals under Massachusetts law. Mass.Gen.L. ch. 111, § 70A grants to medical providers a statutory lien on recoveries from tortfeasors to secure payment for services rendered to their victims. However, the Massachusetts Supreme Judicial Court has held that the statutory lien does not extend to the proceeds of the patient's own automobile insurance policy, because, according to the court, those proceeds arise from a contract and do not constitute "damages" from a tortfeasor.[5]

Therefore, reasons the Hospital, consistency would dictate that § 522(d)(11)(D) be construed similarly not to extend to the proceeds of the Debtor's insurance contract.

Finally, the Hospital argues that because the Debtor incurred debt of $12,812 to various providers of medical services, net of $8,000 allegedly received from her PIP coverage[6], it follows that, of the $15,000 received from Plymouth Rock, at least $12,812 should be considered "compensation for actual pecuniary loss" and is therefore outside the scope of the § 522(d)(11)(D) exemption.

### B. The Debtor

The Debtor contends that the $9,944.08 balance of the $15,000 payment made by Plymouth Rock to her and AP & M, pursuant to her own insurance policy for coverage for "Bodily Injury Caused By An Uninsured Auto," is wholly exempt under § 522(d)(11)(D) of the Code. With respect to the argument that the Debtor's physical injuries are insufficient to fall within the scope of § 522(d)(11)(D), the Debtor states that her severe personal bodily injury is indisputable. The Debtor also argues that the legislative history of § 522(d)(11)(D) should not be considered because the "plain language" of the statute states clearly that a payment on account of personal bodily injury to the extent of $15,000 is exempt. The Debtor alternatively argues that the legislative history of § 522(d)(11)(D), indicating that the exemption "is designed to cover payments ... for actual bodily injury, such as the loss of a limb,"[7] was intended only to illustrate one type of bodily injury which would be covered by the exemption. The Debtor maintains that the loss of a limb is not necessary for the § 522(d)(11)(D) exemption to apply.

---

4. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 362 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318.

5. The unavailability of a statutory lien was the reason for the Hospital's resort to a *judicial* lien to aid in its collection effort from the Debtor.

6. The Debtor allegedly received the sum of $8,000 under the this coverage with the majority paid on account of medical expenses including

those of the Hospital. It appears that the Debtor did not use any of the PIP money to pay medical claims. However, no party argues that the failure to properly use those funds is relevant to any of the issues contained herein.

7. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 362 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318.

Although the Debtor agrees that the payment she received under the Uninsured Coverage was received under a contract, she argues that it was made "on account of personal bodily injury." In support of her position, the Debtor cites the terms of her insurance policy as well as the payment explanation on the $15,000 check. She contends that Plymouth Rock would not have made the $15,000 payment absent her personal bodily injury.

## III. *DISCUSSION*

■ In determining the Debtor's right to exempt the balance of funds received from Plymouth Rock, the Court must begin with the statutory basis for the claimed exemption. The Debtor has claimed her exemptions under the federal scheme set forth in section 522(d) of the Bankruptcy Code. The claimed exemption at issue in this case arises under § 522(d)(11)(D), which provides:

(d) The following property may be exempted under subsection (b)(1) of this section:

... (11) The debtor's right to receive, or property that is traceable to—

(D) a payment not to exceed $15,000 on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent....

11 U.S.C. § 522(d)(11)(D).

Several courts have struggled to define the scope of the § 522(d)(11)(D) exemption, finding the statutory language problematic. In the case of *In re Territo,* the court noted that, "[i]f read literally it could be reasonably concluded from the plain language of the statute that there exists no meaningful exemption for personal injuries, because if actual pecuniary loss and pain and suffering are excluded from exempt status, as the statute seems to say, there is really nothing left." 36 B.R. 667, 670 (Bankr.E.D.N.Y.1984). In *Matter of Lynn,* the court looked to the legislative history for assistance. 13 B.R. 361 (Bankr.W.D.Wis.1981). Regarding § 522(d)(11)(D), House Report 95–595 states the following:

This provision in subparagraph (D)(11) is designed to cover payments in compensation of actual bodily injury, such as the loss of a limb, and is not intended to include the attendant costs that accompany such a loss, such as medical payment, pain and suffering, or loss of earnings. Those items are handled separately by the bill.

H.R. 95–595 at 362, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318. The *Lynn* court reasoned that

"[t]his legislative history cannot be taken seriously. It specifically excludes all of the types of losses that generally make up a personal injury award. [Footnote omitted.] If the legislative history for 11 U.S.C. § 522(d)(11)(D) is used to interpret this exemption, it has no meaning. The meaning of the exemption must be determined by the words of the statute itself and law interpreting those words."

13 B.R. at 362.

The Trustee and the Hospital argue from the legislative history of § 522(d)(11)(D) that the Debtor did not sustain the magnitude of bodily injury necessary to qualify for this exemption. This Court disagrees. As the *Territo* and *Lynn* courts observed, the statute together with its legislative history appear to exclude most common measures of damages for personal injury. It is, however, axiomatic that bankruptcy exemptions should be liberally construed in favor of debtors. *In re Link,* 172 B.R. 707 (Bankr.D.Mass.1994). This Court will not interpret Bankruptcy Code provisions which afford rights to debtors in a fashion that renders those rights illusory. *Cf. In re Witkowski,* 176 B.R. 114, 117 (Bankr.D.Mass.1994). Although § 522(d)(11)(D) excludes from the scope of the exemption payment in compensation for pain and suffering and actual pecuniary loss, this Court believes that the statute must provide for a meaningful exemption of a payment made on account of personal bodily injury. *See In re Lester,* 141 B.R. 157, 163 (S.D.Ohio 1991); *Territo,* 36 B.R. at 670; *Lynn,* 13 B.R. at 362. Physical injury is more than pain and financial loss. It also necessarily includes a loss of freedom and function.

It is undisputed in this case that the Debtor has sustained substantial and permanent bodily injury. The Debtor maintains a partial loss of function of her leg as well as a permanent limp. Even if this Court were forced to analogize to the loss of a limb (although the Court does not believe that it need go that far to find an injury to fit within the statutory exemption), the harm suffered by this Debtor is "akin" to the loss of a limb insofar as her loss of strength and mobility, i.e. the loss of function, is a consequence of her injuries. If Congress meant to exempt only payments made on account of the actual loss of limbs, it easily could have done so. No such limitation can be implied from the statutory language. Nor is there any provision in the statute that requires a minimum degree of bodily injury to qualify for the exemption. Our adversary system, insurance coverage limits, and the $15,000 ceiling on the exemption, all operate to prevent abuse of this exemption. For these reasons, the Court rules that the Debtor has sustained "personal bodily injury" within the meaning of § 522(d)(11)(D).

▪ Further, the Court rejects the argument made by both the Trustee and the Hospital that the § 522(d)(11)(D) exemption is intended to apply only to settlement or judgment proceeds paid by a tortfeasor or by the tortfeasor's insurer. The case of *Meyers v. Bay State Health Care, Inc.*, 414 Mass. 727, 610 N.E.2d 303 (1993), cited by the parties, is inapposite to the exemption issue at bar. The *Meyers* court held that payments made to a person under the underinsurance coverage of the insured's own policy do not constitute "damages," but rather are the proceeds of a contractual obligation of the insurance company.[8] Thus, under Massachusetts law, the payment received by the Debtor in this case was a payment made in fulfillment of her insurer's contractual obligation to her. This fact is, however, no obstacle to the Debtor's claim of exemption in that payment. Whatever the source of payment or legal basis of the underlying obligation, the Court finds that as long as the payment is received "on account of personal bodily injury" it is within the scope of the exemption. Section 522(d)(11)(D) contains no language which limits the applicability of the exemption to payments made by tortfeasors or their insurers. Interpretation of § 522(d)(11)(D) is an issue of federal and not state law.

▪ Finally, the Hospital has suggested that because the Debtor's actual pecuniary loss resulting from the accident exceeded her PIP coverage by $12,812, this Court should consider so much of the $15,000 underinsurance payment to be compensation for that actual pecuniary loss. This Court again disagrees. The facts fail to support a recharacterization of the Debtor's settlement proceeds as compensation for actual pecuniary loss. It is undisputed that the payment the Debtor seeks to exempt was made under the Uninsured Coverage of her insurance policy. The policy states the following: "Under this part, we will pay damages for *bodily injury* to people injured or killed in certain accidents caused by uninsured or hit and run autos." (Emphasis added.) Personal bodily injury is a necessary condition of payment under the Uninsured Coverage provisions of the debtor's insurance policy. Just because the Debtor had financial losses arising from the same incident, it does not necessarily follow that the payment made to the Debtor under the Uninsured Coverage provisions of her contract with Plymouth Rock was not on account of her bodily injuries.

Bankruptcy Rule 4003(c) places the burden of proving that exemptions are improperly claimed on the objecting party.[9] The Court finds that the Hospital has not proved that the compensation received by the Debtor from her insurer was on account of her actual

---

**8.** In the *Meyers* case, this distinction served as the basis of the court's conclusion that the proceeds of the insurance settlement were not subject to the statutory lien codified in Mass.Gen.L. ch. 111, § 70A (1990 ed.).

**9.** Bankruptcy Rule 4003(c) provides in relevant part:

(c) Burden of Proof. In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issue presented by the objections.

pecuniary loss, when the relevant clause in the insurance contract specifically provided for compensation for bodily injury.

## IV. CONCLUSION

For the foregoing reasons, the Court overrules the Trustee's and the Hospital's objections to the Debtor's claim of exemption and, accordingly, allows the exemption under § 522(d)(11)(D) in the sum of $9,944, plus whatever interest has accrued thereon in the account of AP & M. The Court also grants the Debtor's Motion under § 522(f)(1) to avoid the Hospital's lien. A separate Order shall issue in conformity with this Memorandum.