In re Joseph BOVA, Debtor.

Bankruptcy No. 96–15805DAS.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 26, 1997.

---

Geri H. Gallagher, Haverford, PA, for Debtor.

William G. Blasdel, Jr., Philadelphia, PA, Pro Se Debtor.

Edward Sparkman, Standing Chapter 13 Trustee, Philadelphia, PA.

### OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Presently before this court for decision in the instant Chapter 13 bankruptcy case of JOSEPH BOVA ("the Debtor") are motions of the Debtor (1) to obtain relief from the automatic stay to pursue a motion to open a state court judgment ("the Stay Motion") entered against him by William G. Blasdel, Jr. ("Blasdel"); and (2) to avoid Blasdel's judicial garnishment lien on the proceeds of an insurance settlement in the amount of $35,000 ("the Lien Motion").

The Stay motion will be granted by apparent consent upon our granting Blasdel permission to also proceed short of seizing the garnished proceeds. As to the Lien Motion, we find that Blasdel's judgment against the garnishee did not divest the Debtor of his ownership interest in the insurance proceeds; that Blasdel's belated assertion of an attorney's charging lien is not supported by the facts; and that the Debtor may claim the insurance settlement as exempt under 11 U.S.C. §§ 522(d)(11)(D) and (d)(11)(E) based on the evidence presented by the Debtor and Blasdel's failure to prove that the claimed exemptions are otherwise invalid.

1. This court was unable to ascertain the precise nature of the 1990 C.P. Case. Only the docket entries and a few scattered pleadings are part of this record. We do note that Blasdel originally sued not only the Debtor but also Neil E. Jokelson, Esquire, prior counsel of the Debtor in the action brought by the Debtor against Nationwide at May Term, 1989, No. 6595 in the Philadelphia County Court of Common Pleas ("the 1989 C.P. Case"), the settlement of which generated the $35,000 proceeds. The judgment entered

### B. PROCEDURAL AND FACTUAL HISTORY

On June 25, 1996, the Debtor filed the instant individual Chapter 13 bankruptcy case *pro se*, the day after Blasdel obtained a judgment against Nationwide Insurance Company ("Nationwide") in its capacity as garnishee, after previously obtaining judgment in a case in which the Debtor was the only remaining defendant, docketed at October Term, 1990, No. 2623, in the Philadelphia Court of Common Pleas ("the 1990 C.P. Case").[1] On July 5, 1996, Blasdel filed a motion seeking to dismiss this bankruptcy case or obtain relief from the automatic stay to complete his garnishment proceedings in the 1990 C.P. Case. After several continuances, during which time the Debtor retained Geri Gallagher, Esquire, as his counsel, Blasdel's motion was scheduled on a must-be-heard basis and ultimately was denied on November 5, 1996.

At the November 5, 1996, hearing, we made the Debtor's recently-hired counsel aware that she could proceed to open the judgment against the Debtor in the 1990 C.P. Case which had resulted in the garnishment only if the Debtor himself first obtained relief from the automatic stay to do so. *See Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir.1982). The Debtor then filed the Stay Motion before us seeking such relief on November 19, 1996, which was listed for a hearing on December 12, 1996.

On December 12, 1996, the parties agreed that the Stay Motion would be decided on a Stipulation of Facts to be filed by December 20, 1996, and briefs to be filed by January 13, 1997 (the Debtor), and January 24, 1997 (Blasdel).

against the Debtor appears to have resulted from sanctions for refusing to provide discovery. Blasdel claims, with no support in this record, that this judgment was the culmination of a series of unsuccessful lawsuits and disciplinary proceedings brought against him by the Debtor. We are incapable of expressing any opinion regarding the validity of the judgment against the Debtor in the 1990 C.P. Case or the underlying merits of Blasdel's claims, whatever they may be, against him.

On that same December 12, 1996, date, the Lien Motion was filed by the Debtor. A hearing on the Lien Motion was scheduled on January 16, 1997. On January 6, 1997, Blasdel answered the Lien Motion, incorporating in that answer objections ("the Objections") to the Debtor's efforts to exempt the $35,000 proceeds which Blasdel was attempting to garnish in the hands of Nationwide.

On January 16, 1997, we conducted a short hearing on the Lien Motion and the Objections, at which the Debtor was the only witness. Having already received the Debtor's brief on the Stay Motion, we thereafter requested the parties to thereafter submit opening briefs addressing together the Stay Motion, the Lien Motion, and the Objections by January 27, 1997, with reply briefs on all issues due by February 3, 1997. At Blasdel's request, due to a significant supervening personal matter, the January 27 and February 3 dates were extended to February 7, 1997, and February 14, 1997, respectively.

In his opening brief, which surprisingly addressed only the Stay Motion, Blasdel stated that he had "no fundamental objection to the grant of relief from the stay that would treat both Debtor and creditor equally," as long as he was allowed to proceed "up to, but not including seizure of assets of the Bankruptcy Estate." Memorandum of Creditor William G. Blasdel, Jr., in Opposition to Debtor's Relief from Automatic Stay, at 2, 3. Although we are uncertain that the Debtor agreed to precisely this form of relief, Blasdel's offer seems close enough to the Debtor's request for us to be convinced that such an order is appropriate and basically agreed to by both parties. *See In re Gorski*, 1996 WL 634219, at *1 (Bankr.E.D.Pa. October 30, 1996) (stating that the "sparse case authority supports the principle that, if a debtor is granted relief from the automatic stay on its own motion," the non-debtor party "should also be accorded relief"). We therefore need concentrate on only the Lien Motion and the Objections in the remainder of this Opinion.

At the hearing of January 16, 1997, the Debtor testified that he was seriously injured in an automobile accident in 1985, sustaining injuries to his head which impaired his memory and cognitive abilities, as well as injuries to his neck and arms. At the time of the accident, the Debtor was insured by Nationwide. The Debtor testified that Nationwide paid for all his medical bills and that, to his knowledge, there are no outstanding medical bills. Apparently, the Debtor sued Nationwide in the 1989 C.P. Suit because he believed that additional damages suffered by him were compensable under the policy.

The Complaint in the 1989 C.P. Suit referenced medical expenses and lost wages which were unpaid. While eschewing any medical expense benefits, the Debtor testified, with respect to his contention that the settlement included an award for lost wages, that he publishes verses for a living and ran a workshop at the Garden State Correctional Institution of New Jersey in which prisoners produce greeting plaques containing his verses. He further testified that his injuries, having impaired his cognitive ability, adversely affected his ability to produce verses, and therefore that this income stream has declined after sustaining the injuries in the accident. He further stated that, after the accident, he had to hire an assistant at $300 per week to help him run his workshop.

The 1989 C.P. Suit was, as noted, settled by Nationwide's agreement to pay the Debtor $35,000, which Nationwide, for some unexplained reason, continues to hold until the present and which was subject of garnishment by Blasdel. The Debtor, who is presently 67 years old, apparently contends that portions of the insurance settlement are attributable to compensation for his personal injuries, as well as the loss of past and future wages, and that therefore the proceeds are exempt property of his estate under 11 U.S.C. §§ 522(d)(11)(D) and (d)(11)(E). The Debtor testified that his only present income is social security benefits of $422 monthly and dividends of $300 monthly, and hence receipt of the full benefits is necessary for his support.

Blasdel continues to oppose the Lien Motion. Initially, he argued that the proceeds belong to him because of the garnishment judgment he obtained against Nationwide in the 1990 C.P. Suit rendered the proceeds "his" property. In his second brief, in which he addresses the exemption issue, Blasdel

raises, for the first time, a claim that he has a valid attorney's charging lien against the insurance settlement proceeds. Alternatively, Blasdel briefly argues that the proceeds are not exempt because they are payments on account of actual pecuniary losses for medical bills and therefore cannot be considered to have been paid on account of the Debtor's loss of future earnings.

## C. DISCUSSION

### 1. The Debtor Retains an Interest in the Insurance Proceeds Subject to Blasdel's Garnishment Loan, Rendering the Lien Avoidable.

■ It is necessary to first determine whether the Debtor retained an interest in the insurance proceeds as of the date of his bankruptcy filing. To avoid Blasdel's lien, the Debtor must have retained an interest in the proceeds at the time of his bankruptcy filing which impaired valid exemption claims made by him. If the Debtor no longer had a viable interest in the proceeds at filing, he would have no exemption to claim in the proceeds or lien against them to avoid.

■ The "incidence, operation and duration of garnishment liens are a matter of state law." In re Stoddard, 23 B.R. 226, 227 (Bankr.S.D.N.Y.1982). Thus, state law governs in determining when a transfer of a debtor's property has occurred. See In re Weatherspoon, 101 B.R. 533, 538 (Bankr. N.D.Ill.1989), citing In re Coppie, 728 F.2d 951 (7th Cir.1984), cert. denied, 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 772 (1985). The point at which property is deemed to be transferred from a debtor to a judgment creditor in a garnishment proceeding varies somewhat depending on the law of the different states. However, none of the pertinent decisions conclude that the mere entry of a garnishment judgment against the garnishee, without more, deprives a debtor of any and all interest in the garnished funds. See In re Waltjen, 150 B.R. 419 (Bankr.N.D.Ill.1993) (in Illinois, a judgment debtor retains an interest in wages withheld pursuant to wage deduction summons and is permitted to claim the wages as exempt until a wage deduction order is entered); In re Tash, 80 B.R. 304 (Bankr.D.N.J.1987) (New Jersey law holds that a debtor can avoid a judgment lien to the extent it impairs an exemption, regardless of whether the creditor has properly levied on the judgment); In re Buzzell, 56 B.R. 197 (Bankr.D.Md.1986) (under Maryland law, only when garnished wages are paid over to the judgment creditor is a judicial lien extinguished, and with it, the debtor's right to proceed under § 522(f)(1)); In re Moore, 56 B.R. 7 (Bankr.M.D.Ala.1985) (in Alabama, the debtor loses all rights to garnished proceeds only after an order of condemnation has been entered); and In re Ford, 29 B.R. 364 (Bankr.W.D.Mo.1983) (in Missouri, garnished funds are owned by the debtor until the court orders the funds paid over).

■ We have not located any Pennsylvania decisions addressing the issue of when, in a garnishment proceeding, a debtor's right to utilize § 522(f)(1) to avoid the garnishor's lien is cut off. However, we note that, under Pennsylvania law, although the service of a writ of attachment in execution creates a lien, service of the writ, without more, does not transfer ownership of a debtor's property which is subject to execution to the creditor. The effect of service on the garnishee is to prevent the garnishee from making payments to either the judgment debtor or the judgment creditor until the judgment is entered in the attachment suit where payment will be made accordingly. See In re Boylan, 65 F.Supp. 105, 108 (E.D.Pa.), aff'd, 157 F.2d 518 (3d Cir.1946); and 12 STANDARD PA. PRACTICE 2d 317–18 (1996) (a judgment creditor does not acquire ownership of the property subjected to levy by execution). Cf. Weatherspoon, supra, 101 B.R. at 536–40 (garnishment liens do not immediately divest a debtor of all interest in the property, nor immediately transfer that entire interest to the creditor).

It is clear under Pennsylvania law that a lien is only "[a] claim, encumbrance, or charge on property for payment of some debt, obligation or duty." BLACK'S LAW DICTIONARY 922 (6th ed. 1990). In the instant case, the Debtor still preserved an interest in the insurance proceeds after Basdel served a Writ of Execution on Nation-

wide on May 24, 1996. The law is only slightly less clear as to the Debtor's interest in the proceeds at the time that the judgment was entered against Nationwide, but before the property was transferred or paid out by Nationwide to Blasdel.

Here, a garnishment judgment was entered on June 24, 1996, against Nationwide with respect to the insurance settlement proceeds in its possession which were payable to the Debtor. The Debtor argues that the entry of the judgment does not transfer his interest in the funds to Blasdel and that Blasdel still only has a lien on the proceeds. The Debtor concedes, and we agree, that the Debtor's interest in the proceeds would have been lost if the insurance proceeds had been paid out to Blasdel in satisfaction of the judgment. In support of its argument Debtor cites to the Pennsylvania Rules of Civil Procedure ("Pa.R.Civ.P.") §§ 3111(b) and 3146(d). These Rules refer to the effect of service and judgment on the garnishee. The Debtor argues that nowhere in these Rules does it indicate that a judgment raises the lien to a level sufficient to alter the ownership of the property attached.

At trial, Blasdel argued that the judgment itself bestowed any interest which the Debtor had in the proceeds upon him. However, Blasdel offered no authority to support his position and does not address this issue in his brief. He devotes almost as much attention to his recently-concocted alternative argument that he has a charging lien against the proceeds as he does to the issue of his rights as a garnishor.

■ A review of pertinent Pennsylvania law leads to the conclusion that the judgment in favor of Blasdel in the garnishment proceeding does not cause the Debtor's interests in the garnished proceeds to be extinguished prior to the time that the funds garnished were finally turned over to the judgment creditor in payment of the judgment. "A judgment against the garnishee for specific property ... [a]djudicates the possession by the garnishee of that property of the defendant; [a]uthorizes execution against the property to satisfy the full judgment against defendant; [and] [o]bligates the garnishee to make the property available for execu-

tion...." *Schewe v. Wagner,* 13 D. & C.2d 272, 281 (Beaver Co. C.P.1957). The only instance where the Debtor's interest in the property is extinguished is when the rights of the judgment debtor to contest the underlying judgment have been cut off. Once this has been entered, the rights of the judgment debtor are assigned to the garnishor, and the garnishee is left with limited defenses. *Jefferson Bank v. Morris,* 432 Pa.Super. 546, 552, 639 A.2d 474, 477, *appeal denied,* 538 Pa. 658, 648 A.2d 789 (1994). Here, however, the Debtor desires to petition to open the judgment underlying the garnishment, and he appears to have a sound legal basis for doing so. We could find no cases in support of Blasdel's proposition that a judgment against the garnishee, in and of itself, automatically divests the debtor of interest in its garnished proceeds. The following two points also lead us to the conclusion that the debtor retains an interest in garnished proceeds even when judgment has been entered against the garnishee, but prior to payment of the judgment.

First, since Pennsylvania law allows for a debtor to claim an exemption in a proceeding seeking attachment of the debtor's property, it follows that a judgment debtor must retain some interest in the garnished property if he has standing to challenge the garnishment and assert its rights in the property. *See Weatherspoon, supra,* 101 B.R. at 541–42. *See also Bauman v. Bittner,* 152 Pa.Super. 628, 33 A.2d 273 (1943) (a judgment debtor can claim his exemption only out of property belonging to him). The exemption may be raised "by any party in interest, or by the court sua sponte, at anytime prior to levy." *Bakaric v. Bakaric,* 6 D. & C.4th 380, 384–85 (Mercer Co. C.P.1990). The relevant Rules, Pa.R.Civ.P. 3142(a), (c) and 3121(d), state as follows:

Pa.R.Civ.P. 3142:

(a) The defenses of immunity or exemption of property from attachment or a question of jurisdiction over the garnishee may be raised by preliminary objections filed by the defendant or the garnishee ...

. . . . .

(c) Exemption or immunity of property from execution may be raised at any time . . .

Pa.R.Civ.P. 3121:

(d) The court may upon application of any party in interest set aside the writ, service or levy . . .

(2) upon showing of exemption or immunity of property from execution, . . .

In the case before us, the Debtor did not raise any exemptions in the course of the 1990 C.P. Suit. However, the fact that, as a judgment debtor, the instant Debtor would have been allowed to raise exemptions at that juncture leads us to the conclusion that the Debtor retains some right to the garnished property, and that this right has not been transferred to Blasdel.

Second, in its brief the Debtor analogizes its position that the extinguishment of a lien occurs only upon payment to the judgment creditor of the proceeds of a sale of real or personal property by a sheriff. Only when the sheriff sells the property pursuant to an execution judgment is the lien of the levy is abolished and the debtor's interest in the property divested in favor of the purchaser. In *Robinson v. Hart*, 23 Pa.Super. 299, 303 (1903), the court stated that the judgment debtor's "interest was extinguished by the payment of the debt, and until the goods were sold by the sheriff, by virtue of the writ in his hands there was a general property right to the goods in the judgment debtor, which did not divest by the sheriff's levy. . . . An execution and levy are entirely compatible with a continuing property right in the Debtor. . . ."

In a more recent case, *Simmons v. Simmons*, 356 Pa.Super. 32, 40, 514 A.2d 128, 132 (1986), *appeal denied*, 516 Pa. 635, 533 A.2d 93 (1987), the court stated that

a levy upon the judgment debtor's property to the value of the underlying judgment does not constitute a satisfaction of the judgment because the levy does not completely divest the judgment debtor of his interest in the levied upon property and thus does not ensure that the execution creditor's judgment will be paid from any fruit of the levy. . . .

The judgment which occasioned the execution procedures is discharged to the extent that the proceeds of the sheriff's sale are applied to pay the judgment.

It thus seems clear that, under Pennsylvania law, as under the law of the other states where law was referenced at pages 472–73 *supra*, it is only payment of the judgment that will finally cause the debt to be satisfied and consequently cause the extinction of the Debtor's interest in the garnished property and, hence, the lien to vanish. Therefore, we conclude that the Debtor retained an interest in the settlement proceeds despite Blasdel's judgment against Nationwide because Blasdel never obtained possession of the proceeds or payment of the judgment.

2. *Blasdel has not Met the Requirements for Supporting a Lawyer's Charging Lien.*

In his brief, Blasdel, for the first time, raises an alternative claim that he has a valid attorney's charging lien against the proceeds. Blasdel asserts that the Debtor's interest in the insurance proceeds is third in priority after that of Jokelson, who was previously retained by the Debtor, and the alleged secondary interest therein of Blasdel. We note that, in making this argument, Blasdel is seemingly conceding to the Debtor's interest in the insurance proceeds. Based on the evidence before us, Blasdel has failed to meet the requisites for asserting an attorney's charging lien.

To support an attorney's charging lien, there are five factors which must be proven:

"1) that there is a fund in court or otherwise applicable for distribution on equitable principles;

2) that the services of the attorney operated substantially or primarily to secure the fund out of which it seeks to be paid;

3) that it was agreed that counsel look to the fund rather than the client for his compensation;

4) that the lien claimed is limited to costs, fees or other disbursements incurred in

the litigation by which the fund was raised; and

5) that there are equitable considerations which necessitate the recognition of the charging lien."

*United States v. Fidelity Philadelphia Trust,* 459 F.2d 771, 774 (3d Cir.1972), quoting *Recht v. Urban Redevelopment Authority of Clairton,* 402 Pa. 599, 608, 168 A.2d 134, 138–39 (1961). *See also In re Independent Pier Co.,* Bankr. No. 96–12038SR, slip op. at 8 (Bankr.E.D.Pa. Jan. 27, 1997); *In re Sacerdote,* 74 B.R. 487, 490 (Bankr.E.D.Pa.1987); and *In re Laird,* 6 B.R. 273, 276 (Bankr. E.D.Pa.1980).

Blasdel clearly has failed to prove that he meets the second and third, and possibly also the fifth, of the five requirements needed to support an attorney's charging lien. The second criterion is that the services of the attorney must have operated substantially or primarily to secure the fund out of which it seeks to be paid. Blasdel asserts in his brief that he performed certain services in connection with the Debtor's claims against Nationwide. But Blasdel offered no evidence to support the work he did in this matter, nor did he demonstrate how he substantially or primarily contributed to the creation of the resulting funds. Moreover, in his brief, Blasdel avers that it was the work of Jokelson that created the fund. At the hearing, Blasdel stated that "he was never retained on the Nationwide suit … [that he has] no direct ownership claim [in the proceeds] other than [his] garnishment," and he represented the Debtor in "other matters." It is thus apparent to us that Blasdel cannot meet this requirement, since he has not consistently asserted that he even worked on the case which created the fund. Blasdel's claim of an attorney's charging lien must therefore be denied on this basis.

There is another separate basis on which Blasdel's charging lien fails. The third requirement is that there must be an express agreement that counsel look to the fund rather than the client for compensation. This criteria has not been met. There is no evidence, from either Blasdel or the Debtor, of any agreement between the Debtor and Blasdel that Blasdel would be compensated from the fund. We also note that, in 1990, Blasdel went directly against the Debtor for payment of his services. If it were agreed between the parties that Blasdel would be compensated out of the fund, then he would not have been obliged to pursue the Debtor for payment. Also, the fund was created well after Blasdel began taking actions to collect on his fees. All of these observations support the conclusion that there was no agreement between the parties that would satisfy this third criteria.

Finally, the record is silent on the presence of "equitable considerations" supporting Blasdel's lien claim. The issue was not raised at the hearing. No evidence in its support, and thus any equitable factors which support such a lien, are claimed to have been present. The belated assertion of this argument also unfairly precluded the Debtor from presenting evidence to disprove the presence of the five criteria.

The first and fourth criteria may have been proven by Blasdel. However, to support an attorney's charging lien the proof of all five requirements is necessary. Thus, Blasdel's assertion of an attorney's charging lien must be denied on this record.

3. *The Debtor Is Entitled to Exempt the Insurance Proceeds Under §§ 522(d)(11)(D) and 522(d)(11)(E).*

The Debtor claims that the $35,000 insurance settlement proceeds held by Nationwide are exempt from distribution by the trustee pursuant to 11 U.S.C. §§ 522(d)(11)(D) and (d)(11)(E). These Code sections provide as follows:

(d) The following property may be exempted under subsection (b)(1) of this section:

.     .     .     .     .

(11) The debtor's right to receive, or property that is traceable to—

(D) a payment, not to exceed $15,000, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent of; or

(E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

▆▆▆ We find § 522(d)(11)(D) to be a difficult section to understand when read literally. In two opinions, *In re Sidebotham,* 77 B.R. 504, 506 (Bankr.E.D.Pa.1987), and more recently in dictum in *In re Smith,* 179 B.R. 437, 446–47 n. 4 (Bankr.E.D.Pa.1995), we held that the "exceptions" set forth in that Code section, payments on account of "pain and suffering" and "compensation for actual pecuniary loss," must be narrowly construed. Thus, in *Sidebotham* we held that the "pain and suffering" exception excluded only damages awarded *"solely* for pain and suffering or far out of proportion to the actual bodily injuries suffered by the Debtor." 77 B.R. at 506. Consistent with our conclusion in *Sidebotham* and *Smith* that this section should include most claims which include *bona fide* bodily injury, we would only be inclined to exclude "compensation for actual pecuniary loss" which is so designated.

Other courts have read the exceptions set forth in § 522(d)(11)(D), or its state law counterparts, in the same narrow fashion. *See In re Martinez–Whitford,* 199 B.R. 74, 77–78 (Bankr.D.Mass.1996); *In re Geis,* 66 B.R. 563, 564 (Bankr.N.D.Ga.1986); *In re Haga,* 48 B.R. 492, 495 (Bankr.E.D.Tenn. 1985); *In re Territo,* 36 B.R. 667, 670–71 (Bankr.E.D.N.Y.1984) ("*Territo II* "); *In re Territo,* 32 B.R. 377, 381–82 (Bankr.E.D.N.Y. 1983) ("*Territo I* "); and *In re Lynn,* 13 B.R. 361, 362 (Bankr.W.D.Wis.1981). *But see In re Marcus,* 172 B.R. 502, 505 (Bankr.D.Conn. 1994).

At the January 16, 1997, hearing, the Debtor provided unrebutted testimony that the nature of his injuries arising out of the accident in question were very serious bodily injuries, some of which are permanent. In particular, the Debtor testified that he sustained injuries to his head which impaired his memory and cognitive abilities. The accident also caused him to suffer a hearing loss. Lastly, the Debtor experienced injuries to his arms and neck. The injuries incurred by the Debtor constitute actual bodily injuries which were likely to, and did, impair his earning capacity.

Blasdel argues very briefly that the proceeds are not exemptible because they are "a combination of lost wages and pecuniary losses suffered by *Debtor* for a period which does not extend beyond June, 1988." Memorandum of Creditor William G. Blasdel, Jr., in Opposition to Debtor's Motion to Avoid Lien, and Cross–Motion on Objection(s) to Exemptions Claimed by Debtor, at 5. However, although possibly having access to same as the Debtor's prior counsel, Blasdel did not offer any evidence at the hearing, such as unpaid medical bills submitted to Nationwide, to support this statement. Meanwhile, the Debtor testified that Nationwide had already paid for his medical bills and that he stopped going to the doctor because Nationwide stopped paying his bills, eliminating the potential of any outstanding medical bills. We do not think that compensation for loss of past wages or other pecuniary losses are excluded under § 522(d)(11)(D).

To a large degree, the application of § 522(d)(11)(D) to certain facts often depends on the allocation of the burden of proof. Frequently, as here, debtors testify to receipt of lump-sum settlements which are awarded to compensate a broad range of damages and are not specifically allocated to any particular elements of damages. The objector usually has no additional evidence regarding allocation to submit and must argue from the debtor's evidence.

▆▆▆ In these circumstances most courts have held that, since exemption laws are generally construed broadly in favor of claimants, the burden of proving that a specific element of a personal injury award is excluded by § 522(d)(11)(D) lies on the objector. *See In re Lester,* 141 B.R. 157, 161 (S.D.Ohio 1991); *Smith, supra,* 179 B.R. at 447 n. 4; *In re Russell,* 148 B.R. 564, 566 (Bankr.E.D.Ark.1992); *In re Tomasso,* 98 B.R. 513, 515–16 (Bankr.S.D.Cal.1989); *Sidebotham, supra,* 77 B.R. at 506; *In re Harris,* 50 B.R. 157, 159–60 (Bankr.E.D.Wis.1985); and *Territo I, supra,* 32 B.R. at 382. *But see*

*In re Brooks,* 12 B.R. 22, 25 (Bankr.S.D.Ohio 1981). We therefore conclude that the failure of Blasdel to meet his burden of proving that portions of the settlement would fall within either of the exclusions of § 522(d)(11)(D) is fatal to the Objections.

Of course § 522(d)(11)(D) includes a $15,000 cap on exemptions taken pursuant to that Code section. The Debtor has, however, also claimed that at least a substantial portion of the $35,000 settlement sum is attributable to his loss of future earnings. Therefore, he contends that any excess recovery above $15,000 should be attributed to future earnings and is exempt pursuant to § 522(d)(11)(E), which renders exempt all compensation for loss of future earnings.

The only responses of Blasdel appear to be contentions that all of the $35,000 sum should not be allocated to loss of future earnings and that future earnings should not extend beyond June 1988. No explanation for the June 1988 cut-off date has been provided. Furthermore, the Debtor presented evidence that his future earnings loss prior to June 1988 exceeded the $20,000 figure of funds not allocated to § 522(d)(11)(D), entering into evidence a profit and loss statement indicating a loss of over $30,000 in 1986 alone.

▇▇▇ In determining whether an exemption can be made under § 522(d)(11)(E), it must first be determined whether the payment in issue was made to compensate the debtor for a loss of future earnings. *See, e.g., In re Cramer,* 130 B.R. 193, 194–95 (Bankr.E.D.Pa.1991); and *In re Rockefeller,* 100 B.R. 874, 877 (Bankr.E.D.Mich.), *aff'd,* 109 B.R. 725 (E.D.Mich.1989). If it is determined that it is such a payment, the court must consider whether "the debtor's present circumstances, other exempt property, the debtor's present income and any other factors indicating what amount is truly necessary to meet the debtor's basic needs." *Haga, supra,* 48 B.R. at 495. *See also Smith, supra,* 179 B.R. at 446–47 n. 4; *Russell, supra,* 148 B.R. at 566–67; *Cramer, supra,* 130 B.R. at 195–96; *Rockefeller, supra,* 100 B.R. at 877; and *Territo II, supra,* 36 B.R. at 671.

▇▇ The instant facts lead to the conclusion that the Debtor's claim of an exemption under § 522(d)(11)(E) for the balance of the proceeds not covered under § 522(d)(11)(D) is appropriate. At the hearing, the Debtor produced the insurance policy which provided coverage for the insured's "work loss" and "income loss expenses" incurred over the insured's lifetime. The Debtor testified that he could no longer work nearly as efficiently in his previous capacity as a "verse writer" after he suffered head injuries in the automobile accident. Specifically, after the accident the Debtor testified that he found it necessary to employ an assistant at a salary of $300 per week over a two year period to help him in his business. The Debtor testified that his income suffered severely as a result of his injuries. As noted at page 477 *supra,* he submitted a profit and loss statement showing a loss of over $30,000 in 1986 alone. Since the Debtor's injuries are permanent, it is logical to conclude that, at the age of 67, he will likely never attain the income level he once had prior to his accident, thus resulting in a very substantial future income loss.

Insofar as the necessity of the funds attributable to future earnings lost for his future support, we note from the Debtor's Schedule I, which was entered into the record as part of the Stipulation of Facts, that the Debtor presently receives $422 in social security benefits and $300 from interest and dividend income per month. Income of $722 monthly, or about $8,650 annually, borders on the poverty line. *See* 61 FED.REG. 8286 (March 4, 1996) (income of $7,740 annually is poverty line for a single person in Pennsylvania in 1996). The Debtor's projected monthly expenses are $712, not including an additional $17 to be paid into the plan each month. This does not leave the Debtor with any cushion for unexpected expenses. In addition, the Debtor has only exempted basic items relating to his residence, household items, transportation and work related equipment. It therefore appears to us that the $35,000, or any portion allocated therefrom to future earnings of the Debtor, are reasonably necessary for his support.

Blasdel has not offered any evidence to disprove the characterization of at least $20,-

000 of the insurance proceeds as payment for lost future earnings. He has not suggested that the entire $35,000 or any portion therefrom is not reasonably necessary for the Debtor's support. In light of these facts and the absence of any contrary evidence, noting that the burden of proof of the validity of objections to a claim of an exemption pursuant to § 522(d)(11)(E) is on the objector, as in the case of an exemption claim pursuant to § 522(d)(11)(D), see pages 476–77 supra, it is clear that the $20,000 remainder of the proceeds from the insurance settlement not exempt under § 522(d)(11)(D) can reasonably be attributed as a payment for loss of future earnings under § 522(d)(11)(E). Therefore, the Debtor can validly claim all of the $35,000 settlement proceeds exempt under a combination of §§ 522(d)(11)(D) and (d)(11)(E).

We acknowledge the apparent holding of Russell, supra, 148 B.R. at 566, that a debtor may not make exemption claims under two different Code sections with respect to one particular personal injury settlement, and must elect either §§ 522(d)(11)(D) or (d)(11)(E) as a basis for exemption. This court respectfully disagrees with that conclusion. There is nothing in the Code that requires the Debtor to choose one exemption under which to claim all aspects of a single personal injury award. The only other case which we could locate that addressed the issue directly, In re Wheeling, 68 B.R. 388, 390 (Bankr.W.D.Pa.1986), holds that the sections of § 522(d)(11) supplement each other and other exemption laws. Most courts have not addressed the issue and have assumed, we think correctly, that both sections of § 522(d)(11) can be invoked to exempt different portions of a recovery from a single incident. See Smith, supra, 179 B.R. at 446–47 n. 4; In re Ziegler, 156 B.R. 151, 154 (Bankr.W.D.Pa.1993); Cramer, supra, 130 B.R. at 193–95; Rockefeller, supra, 100 B.R.

at 877; Sidebotham, supra, 77 B.R. at 506; Harris, supra, 50 B.R. at 159–60; and Territo II, supra, 36 B.R. at 671.

4. *The Debtor May Avoid Blasdel's Judicial Lien on the Insurance Settlement Proceeds.*

The foregoing discussions render the final issue of whether the Debtor can avoid Blasdel's lien on the insurance proceeds quite simple.[2] Section 522(f)(1) permits the debtor to avoid a lien if four requirements are met: "(1) the lien the debtor seeks to avoid is a judicial lien; (2) the debtor claims an exemption in the property to which the debtor is entitled under section 522(b); (3) the creditor's lien impairs the debtor's exemption; and (4) the debtor has an interest in the property." In re Harville, 60 B.R. 188, 190 (Bankr.W.D.Ky.1986). See Martinez–Whitford, supra, 199 B.R. at 79 (exemptions ruled upon in connection with a lien avoidance motion).

The first requirement is met. A lien arising from a garnishment is a judicial lien avoidable by the Debtor under § 522(f)(1). See In re Page, 171 B.R. 349 (Bankr. W.D.Wis.1994); Harville, supra, 60 B.R. at 190; and Moore, supra, 56 B.R. at 8. The second criterion is also met in light of our conclusion that the Debtor is allowed to exempt the settlement under §§ 522(d)(11)(D) and (d)(11)(E) at pages 475–78 supra. The third criterion is also satisfied in that Blasdel's garnishment clearly impairs the Debtor's exemptions under §§ 522(d)(11)(D) and (d)(11)(E). And lastly, the fourth criterion, which requires the Debtor to have an interest in the proceeds, has also been met, per our discussion at pages 472–74 supra.

---

**2.** The Debtor also argues that the proceeds could be exempted under 11 U.S.C. § 522(d)(10)(C), which relates to "a disability, illness, or unemployment benefit." We believe that this Code section refers exclusively to governmental benefits, not private insurance payments as are at issue here. Accord, In re Haynes, 146 B.R. 779, 780–81 (Bankr.S.D.Ill.1992); and In re Buchholz, 144 B.R. 443, 445–46 (Bankr.N.D.Iowa 1992).

Finally, we note that the Debtor, had he not had significant other assets that he wished to exempt under 11 U.S.C. § 522(d), could have probably exempted the proceeds under 11 U.S.C. § 522(b)(2)(A) and applicable state law, 42 Pa. C.S. § 8124(c)(7). See In re Lowenthal, 203 B.R. 576 (Bankr.E.D.Pa.1996).

## D. CONCLUSION

We will therefore enter an order granting, for the most part, both of the Debtor's Motions and overruling Blasdel's Objections to the Debtor's claimed exemptions.

### ORDER

AND NOW, this 26th day of February, 1997, upon consideration of the Stipulation of Facts which the parties agreed would constitute the record at the hearing of December 12, 1996, on the Debtor's motion for relief from the automatic stay ("the Stay Motion"); the record made at the hearing of January 16, 1997, on the Debtor's motion to avoid the judicial lien ("the Lien Motion") of William G. Blasdel, Jr., Esquire ("Blasdel") and Blasdel's objection to the Debtor's exemptions ("the Objections"); and the briefs of the parties addressing both issues, it is hereby ORDERED AND DECREED as follows:

1. The Stay Motion is GRANTED in part. Both the Debtor and Blasdel are granted relief from the automatic stay to pursue all aspects of the case docketed at October Term, 1990, No. 2623, in the Philadelphia Court of Common Pleas, except that Blasdel may not proceed to seize any assets of the Debtor or the Debtor's estate without express further permission from this court to do so.

2. The Objections are OVERRULED. The Debtor may exempt his interest in the entire $35,000 proceeds ("the Proceeds") of his insurance settlement with Nationwide Insurance Co. ("Nationwide") pursuant to 11 U.S.C. §§ 522(d)(11)(D) and (d)(11)(E).

3. The Lien Motion is GRANTED. The lien upon the Proceeds arising from Blasdel's garnishment of the Proceeds in the hands of Nationwide is hereby AVOIDED.