In re Lee C. CHRISTO, Debtor.

Lee C. Christo, Appellant,

v.

Jonathan D. Yellin, Chapter
7 Trustee, Appellee.

BAP No. MB 98–016.

United States Bankruptcy Appellate Panel
of the First Circuit.

Jan. 6, 1999.

---

Carl E. D'Angio, Jr. and D'Angio Law Offices, Waltham, MA, for appellant.

Jonathan D. Yellin, David M. Belcher, and Stroock & Stroock & Lavan LLP, Boston, MA, for appellee.

Before GOODMAN, LAMOUTTE and DE JESÚS, U.S. Bankruptcy Judges.

LAMOUTTE, Bankruptcy Judge.

The issue before the panel is whether a debtor under Chapter 7 of the Bankruptcy Code may claim more than one exemption of $15,000.00 for payment received on account of personal bodily injury pursuant to 11 U.S.C. § 522(d)(1)(D) when the debtor has three separate tort claims pending as a result of three separate pre-petition automobile accidents. The debtor appeals the bankruptcy court's determination that she may not claim more than one exemption on account of personal bodily injury.

### *Jurisdiction*

The Bankruptcy Appellate Panel has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. We review the Bankruptcy Court's application of the law *de novo* and its findings of fact under a clearly erroneous standard. *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir.1995); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir.1993).

### *Background*

The debtor, Lee C. Christo, filed her voluntary petition under Chapter 7 of the Bankruptcy Code on January 22, 1997. The debtor included in Schedule B three tort actions for motor vehicle accidents which occurred on April 22, 1994; May 25, 1995; and May 3, 1996; and claimed an exemption for each action under section 522(d). The debtor is permanently disabled as a result of the injuries sustained in these accidents.

On March 24, 1997, the chapter 7 trustee filed a limited objection to the claimed exemption on the grounds that no amount for the claimed exemption was listed, and the bankruptcy court sustained the objection. The debtor subsequently filed a motion for determination of the validity of the exemptions, to which the trustee replied, arguing that the debtor is only entitled to a total exemption of $15,000 for settlement of one or all of the personal injury actions. At a hearing on January 21, 1998, the court held that the exemption set forth in § 522(d)(11)(D) is limited to a single $15,000 claim on account of personal injury.

The debtor argues that she should be allowed the statutory exemption for each of her personal injury claims. She argues that the meaning of 11 U.S.C. § 522(d)(11)(D) is not plain, but rather is ambiguous and should be construed liberally to effect the legislative purpose as reflected in the legislative history. It is her position that an evaluation of the entire exemption provision, along with the legislative history, leads to the conclusion that a debtor should be able to exempt the right to payment for any personal injury up to the statutory maximum as long as the payment is in compensation of actual bodily injury.

The trustee argues that the debtor is only entitled to a single exemption totaling $15,000 for all personal bodily injury, regardless of the number of accidents, because the statutory language, on its face, does not support an exemption which varies in amount depending upon the number of accidents incurred. Further, he argues that § 522, read as a whole, does not support debtor's position; and to hold otherwise would result in disparate treatment between similarly situated debtors.

### *Discussion*

Section 522 of the Bankruptcy Code sets forth which property a debtor may exempt from property of the estate, including property which is compensation for certain types of losses described in subsection (d)(11). Specifically, § 522(d)(11)(D) provides that a debtor may exempt:

The debtor's right to receive, or property that is traceable to—

a payment, not to exceed $15,000, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent.

11 U.S.C. § 522(d)(11)(D). The exemption is designed to cover only payments compensating actual bodily injury. 4 Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 522.09[11] (15th ed. rev.1998). Collier goes on to state "[i]f the debtor has sustained injuries in separate accidents, he or she may claim an exemption for the injuries suffered in each accident. Following this logic, it would appear that the debtor could make separate claims for exemption for each injury suffered in a single accident." *Id.* at 522–67, citing *In re Marcus*, 172 B.R. 502 (Bankr. D.Conn.1994).

The courts have noted the difficulty of interpreting and applying § 522(d)(11)(D). *See, e.g., In re Ciotta*, 222 B.R. 626, 630 (Bankr.C.D.Cal.1998) ("The legislative history of the federal exemption statute is sparse and largely unhelpful in interpreting the exemption.") and ("Several bankruptcy courts have recognized that Congress' intent in this area is 'somewhat ambiguous'."); *In re Gregoire*, 210 B.R. 432, 436 (Bankr.D.R.I.1997) ("While neither the statute nor its legislative history are noteworthy for clarity....."); *In re Bova*, 205 B.R. 467, 476 (Bankr.E.D.Pa. 1997) ("We find § 522(d)(11)(D) to be a difficult section to understand when read literally.").

The First Circuit has stated that, in interpreting a statute, "[t]he 'plain meaning' of statutory language controls its construction." *Summit Investment & Development Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir.1995). However, the meaning of particular statutory language "is to be gleaned from the statute as a whole, including its overall policy and purpose". *Id.* (citations omitted). While "[p]lain statutory language does not prompt recourse to counterveiling legislative history ... the congressional intendment conveyed by unclear statutory language may be discernible from its legislative history." *Id.*

Furthermore, it is well established that exemptions should be construed liberally in favor of the debtor. *See, e.g., In re Ciotta*, 222 B.R. 626, 630 (Bankr.C.D.Cal.1998) ("Several bankruptcy courts have held that when Congress' intent is ambiguous, bankruptcy exemptions should be liberally interpreted in favor of the Debtor."); *In re Chavis*, 207 B.R. 845, 846 (Bankr.W.D.Pa.1997) ("Bankruptcy exemptions should be construed liberally in favor of debtors."); *Gaertner v. Claude (In re Claude)*, 206 B.R. 374, 377 (Bankr.W.D.Pa.1997) ("[I]f it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen."); *In re Martinez–Whitford*, 199 B.R. 74, 77 (Bankr.D.Mass.1996) ("It is axiomatic that bankruptcy exemptions should be liberally construed in favor of debtors.").

The trustee in the case before the panel relies on *In re Rhodes*, 147 B.R. 443 (Bankr. N.D.Ill.1992), wherein the bankruptcy court sustained the chapter 7 trustee's objection to the debtors' claim of four exemptions for payments received on account of personal bodily injury resulting from four separate incidents, and held that the statutory exemption is limited to one per debtor rather than one per injury. The court in *Rhodes* interpreted the Illinois personal exemption statute,[1] the wording of which is substantially similar to § 522, with the exception that the Illinois statute does include pain and suffering. In so doing, the court employed the rules of statutory construction used by the Illinois Supreme Court, including the following canons of construction: (1) the consideration of the entire statute; (2) the last antecedent doctrine; (3) the presumption for statutory consistency; and (4) the presumption against absurdity and injustice. 147 B.R. at 445, 446.

Applying these canons to the Illinois statute, the court found that the plain language of the statute does not support an exception which varies in amount depending on the number of personal injuries affecting the debtor. 147 B.R. at 446. The court noted that the statute contains no language relating to the number of personal injuries. *Id.* Further, the court found that the statutory

---

1. Illinois has "opted out" of the federal exemption scheme set forth under § 522(d). *Rhodes*, 147 B.R. at 444; Ill.Rev.Stat. Ch. 110, ¶ 12–1201 (1991).

scheme as a whole indicates that the phrase "on account of personal bodily injury" "must be seen as defining the nature of the payment that is exempt and not the number of injuries." 147 B.R. at 447. The court found it would be unjust to interpret the statute to allow exemptions based upon the number of incidents because that would result in disparate treatment of similarly-situated debtors, noting that the number of incidents suffered by a debtor has no bearing on the debtors need for funds, and therefore should not affect the exemption allowed. *Id.*

A contrary result was reached in *In re Marcus*, 172 B.R. 502 (Bankr.D.Conn.1994). In *Marcus* the Bankruptcy court overruled the chapter 7 trustee's objection and held that the debtor, who sustained separate permanent injuries in two different automobile accidents, could claim an exemption for each injury under § 522(d)(11)(D). The court noted that "[t]he language of § 522(d)(11)(D) is not plain, but ambiguous, as to whether it exempts single or multiple exemptions for bodily injury. A court, accordingly, should consider both the complete exemption scheme outlined in § 522(d), and the statute's legislative history." 172 B.R. at 504.

In examining the complete exemption scheme outlined in § 522(d), the court found that while subsections (1), (3), (4), (5), (6), and (8) of § 522(d) all refer to the "aggregate interest" of the debtor which may be exempted, subsection (11) contains no such restrictive language. *Id.* Further, the court found that another subsection, 522(d)(2), contains specific language limiting the exemption to one motor vehicle, indicating that Congress specifically intended to limit that type of exemption. In contrast, no such language was included in § 522(d)(11)(D). The court concluded, "[t]aken together, the language of the entire exemption provision and the legislative history lead to the reasonable conclusion that Congress intended that a debtor may exempt the right to payment for any personal injury up to the statutory maximum...as long as the payment is made to compensate actual bodily injury." 172 B.R. at 505.

The *Marcus* court distinguished the *Rhodes* decision, reasoning that while the exemption in § 522(d)(11)(D) is ·limited to actual bodily injury, the Illinois statute. interpreted in *Rhodes* includes pain and suffering. *Marcus*, 172 B.R. at 505. Thus, according to the court, it makes sense that Congress would allow a debtor more than one exemption· for serious bodily injury resulting from different accidents under the federal scheme because § 522 limits the exemption for recovery due to pain and suffering. *Id.*

This panel therefore considers the language of § 522(d)(11)(D), the legislative history of the exemption statute, and· the decisions of those courts which have interpreted and applied the same, in determining how to resolve the issue before it. The language of § 522(d)(11)(D) says that the debtor has the right to exempt "a" payment, but is not clear as to whether the debtor may multiply the $15,000 limitation if she is entitled to more than one payment on account of suffering more than one incident of personal bodily injury. However, the use of the preposition "a" along with "payment" in the singular would seem to indicate that the exemption of a single payment was intended.

As has been previously stated, in examining the language of the statute, the *Marcus* court noted that other subsections refer to the debtor's "aggregate interest" while subsection (11) does not. This makes sense, however, as Congress could have reasonably anticipated the potential for multiple claims of exemption in those other subsections, such as. subsection (1) (real property), (2) (household furnishings), and (4) (jewelry), leading to the need for the "aggregate interest" restriction. Congress likely did not anticipate a situation such as the case before the panel involving multiple incidents of bodily injury. Similarly, while the *Marcus* court noted that subsection (2)· specifically limits the exemption to one motor vehicle, it is easy to see how Congress could have anticipated a debtor owning more than one car, resulting in the need for the restriction. Thus, the fact that subsection (11) does· not include the "aggregate interest" language, or a numerical limitation, like found in the other subsections, does not necessarily indicate a Congressional · intent to preclude a limit on the exemption for bodily injury under subsection (11).

The House Report which accompanied the Bankruptcy Reform Act of 1978 indicates that the exemptions set forth in subsection (D) "are derived in large part from the Uni-

form Exemptions Act, promulgated by the Commissioners of Uniform State Laws in August, 1976." H.R. Rep. 95–595, 95th Cong., 1st Sess.1977, 1978 U.S.Code Congr. & Admin.News 5963. The prefatory note to the Uniform Exemptions Act noted that the Commission on Bankruptcy Laws of the United States in 1973 recommended that an individual debtor by or against whom a petition is filed under the bankruptcy law should be allowed exemptions as prescribed by that law subject to appropriate maximums. Unif. Exemption Act § 6 (amended 1979). It further states that:

> The Uniform Exemptions Act, promulgated by the Conference in 1976, derived in considerable part from the proposals of the Commission on Bankruptcy Laws for exemptions to be incorporated in the bankruptcy laws. The provisions governing exemptions in the new Bankruptcy Code enacted by Congress in 1978, 11 U.S.C. § 522 (1978), are in turn derived in considerable part from the Uniform Exemptions Act.

*Id.* In discussing the content of the Act, the Commission notes:

> Section 6 of this Act, like the exemptions section of the Bankruptcy Code (11 U.S.C. § 522), accords protection to rights and benefits that provide support for an individual debtor and his dependents, but the Uniform Exemptions Act restricts the exemption to the extent the rights and benefits are reasonably necessary for such support.

*Id.* Section 522(d)(11)(D) is derived from § 6 of the Uniform Exemptions Act, which reads, in pertinent part:

> § 6. [Property Exempt to Extent Reasonably Necessary for Support].
> (a)(3) proceeds of insurance, a judgment, or a settlement, or other rights accruing as a result of bodily injury of the individual or of the wrongful death or bodily injury of another individual of whom the individual was or is a dependent;

and, further,

> (b) The phrase "property to the extent reasonably necessary for the support of him and his dependents" means property required to meet the present and anticipated needs of the individual and his dependents, as determined by the court after consideration of the individual's responsibilities and all the present and anticipated property and income of the individual, including that which is exempt.

*Id.* The Comment to this section indicates that its purpose is to protect a judgment on a personal injury claim from being levied by a creditor. Furthermore, with regard to the determination of what is "reasonably necessary for the support of the individual and his dependents", the Comment states:

> [T]he definition requires the court to direct its attention to the individual's needs and responsibilities, including particularly those that may be attributable to the disability, illness, or injury on the basis of which benefits became payable. . . .

In examining the purpose of bankruptcy exemptions, one writer has noted:

> [T]he purpose of bankruptcy exemptions have generally been linked to a minimalistic view of how bankruptcy should benefit a debtor. Exemptions, both under state and federal bankruptcy laws, have generally been recognized as necessary in order to preserve the debtor's access to property that is essential to 'life and livelihood,' and to shift the burden of support for the debtor and the debtor's dependents from the public to private credit sources.

Hon. William Houston Brown, "Political and Ethical Considerations of Exemption Limitations: The 'Opt–Out' as Child of the first and Parent of the Second", 71 Am. Bankr.L.J. 149, 163 (Spring 1997). Thus, as bankruptcy law has developed, "exemption of a sufficient amount of property, coupled with the expectation of a discharge of personal liability on prebankruptcy debts, have joined to form the basic concept of a financial fresh start for the 'honest but unfortunate debtor'." *Id.* Thus, "the congressional endorsement of such historical purposes is some evidence of a federal exemption policy, a policy which should not be viewed in a vacuum separate from the bankruptcy laws or concepts such as fresh start." *Id.* at 170.

The purpose of the statute, as indicated by its legislative history and background, is served by limiting it to one exemption, regardless of the number of incidents of bodily injury, because the determination of what is "reasonably necessary" to support the debtor should not hinge on the number of injuries

suffered. While one might argue that a debtor who has suffered more than one incident of bodily injury will require more support than a debtor who has suffered only one, this would not necessarily be the case. For example, a debtor who has suffered a greater bodily injury may require more support than one who has suffered a lesser one(s). Congress set a cap of $15,000.00 to be exempted on account of bodily injury, and there is no indication that amount should be multiplied depending on an individual debtor's situation.

### Conclusion

■ The panel agrees with the *Rhodes* court that the phrase "on account of personal bodily injury" should be interpreted as defining the *nature* of the payment that is exempt and not the *number* of injuries suffered. In allowing a debtor under the Bankruptcy Code to exempt income resulting from compensation for bodily injury, Congress could not have intended that the courts examine each individual's circumstance to determine the amount of exemptions to be allowed based upon the extent of the injury suffered. Rather, Congress provided that a debtor should be allowed to exempt *a* payment (i.e. *one*), up to $15,000.00, which it has determined to be a reasonable amount in order to obtain a fresh start. The panel declines to follow the rationale of the *Marcus* court inasmuch as allowing a debtor a $15,000.00 exemption for each injury suffered could lead to an absurd and unjust result.[2]

It is this panel's decision that a reasonable interpretation of § 522(d)(11)(D), based on the language of the statute and its legislative history and development leads to the conclusion that a debtor should be allowed only one exemption in the amount of $15,000 on account of personal bodily injury.

> If viewed as a balancing of competing interests, bankruptcy laws should serve both 'the need of the debtor for economic rehabilitation by debt forgiveness and a fresh start, . . . [and] the interests of creditors and society that the absolved debts be free of fraud, and that the debtor's assets in excess of exemptible amounts be distributed to the creditors.

---

**2.** For example, under the *Marcus* rationale a debtor who suffered three relatively minor injuries would be allowed an exemption of $45,000, while another debtor who suffered one catastrophic injury would only be allowed an exemption of $15,000.

Hon. William Houston Brown, "Political and Ethical Considerations of Exemption Limitations: The 'Opt–Out' as Child of the First and Parent of the Second", 71 Am. Bankr. L.J. 149, 152 (Spring 1997) (citation omitted). Interpreting § 522(d)(11)(D) to allow only one exemption on account of serious bodily injury implements these policy considerations which underlie the Bankruptcy Code.

The decision of the bankruptcy court is affirmed.