192 F.3d 36 (1st Cir. 1999)
 IN RE: LEE C. CHRISTO, Debtor.
LEE C. CHRISTO, Appellant,
v.
JONATHAN D. YELLIN, Chapter 7 Trustee, Appellee.
 No. 99-9002.
 United States Court of Appeals for the First Circuit.
 Submitted Sept. 7, 1999.
Decided Oct. 4, 1999.
 
 APPEAL FROM THE BANKRUPTCY APPELLATE PANEL OF THE FIRST CIRCUITCarl E. D'Angio, Jr. on brief for appellant.
 Jonathan D. Yellin, Craig J. Ziady, and Riemer & Braunstein LLP on brief for appellee.
 Before Stahl, Circuit Judge, John R. Gibson, Senior Circuit Judge,* and Lynch, Circuit Judge.
 LYNCH, Circuit Judge.
 
 
 1
 The question presented is whether a debtor under Chapter 7 of the Bankruptcy Code may claim more than $15,000 in exemption for payment received on account of personal bodily injury under 11 U.S.C. § 522(d)(11)(D). We hold that a debtor may not.
 
 
 2
 Lee C. Christo filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code on January 22, 1997. In her Schedule C, she claimed three exemptions for three personal injury claims stemming from three separate pre-petition accidents. Christo's personal injury claims had not yet been settled; she sought potential exemptions of $15,000 for each of the three personal injury claims, for a total potential exemption of $45,000. The trustee filed a "Limited Objection to Claim of Exemption" with respect to the three tort claims on the grounds that no value was listed. The bankruptcy court sustained the objection, continued the matter generally, and directed Christo to file amended schedules of exemptions. Christo then filed a "Motion for Determination of Validity of Exemptions and Consequent Denial of Trustee's Limited Objection to Claims of Exemption." In response, the trustee argued that, under 11 U.S.C. § 522(d)(11)(D), Christo was entitled only to a total exemption of $15,000 for all her personal injury claims. The Bankruptcy Court found for the trustee, and the Bankruptcy Appellate Panel (BAP) affirmed. See In re Christo, 228 B.R. 48, 53 (B.A.P. 1st Cir. 1999).
 
 
 3
 The interpretation of § 522(d)(11)(D) of the Bankruptcy Code is a legal question, which we review de novo. See In re Lamanna, 153 F.3d 1, 3 (1st Cir. 1998). Section 522(d)(11)(D) of the Code states:
 
 
 4
 d) The following property may be exempted under subsection (b)(1) of this section: . . . (11) The debtor's right to receive, or property that is traceable to-- . . . (D) a payment, not to exceed $15,000, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent . . . .
 
 11 U.S.C. § 522(d)(11)(D).[1]
 
 5
 Christo, relying on the arguments set forth in In re Marcus, 172 B.R. 502 (Bankr. D. Conn. 1994), contends that a debtor is entitled, under § 522(d)(11)(D), to multiple exemptions for personal injury judgments or settlements. See also In re Anderson, 932 P.2d 1110, 1113-14 (Okla. 1996) (relying on Marcus to interpret an analogous provision of the Oklahoma Code). She argues that § 522(d)(11)(D) is not plain on its face and, thus, should be interpreted within the context of the entire exemption scheme of § 522(d) and the legislative history of the statute. That scheme and history, she argues, support a reading that permits as many $15,000 exemptions as there are personal injury claims. She notes that exemptions allowed under subsections (1), (3), (4), (5), (6), and (8) of § 522(d) all refer to the "aggregate" interest that may be exempted, while subsection (11) does not. When Congress intended to specify a limit to the total number of exemptions under a specific category, she concludes, it made its view clear. Congress made no such specification in subsection (11)(D) and, therefore, none can be presumed. Christo also points to a note to the precursor provision to § 522(d)(11)(D) in the Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93rd Cong., 1st Sess. (1973), which states that the value of personal injury exemptions "is not limited." Since the House Report on the final bill did not explicitly reject this note, she contends that we should adopt the Commission Report's view in our interpretation of the statute. Finally, she points to the policy of liberally construing exemptions in favor of the debtor.
 
 
 6
 The trustee, espousing the view taken in In re Rhodes, 147 B.R. 443, 444-45 (Bankr. N.D. Ill. 1992) (interpreting an analogous provision of the Illinois Code), argues that the language of the statute is clear, the statutory scheme contradicts Christo's claim, and that to hold otherwise would lead to nonsensical results. The trustee points out that § 522(d)(11)(D) refers to "a payment, not to exceed $15,000, on account of personal bodily injury," 11 U.S.C. § 522(d)(11)(D) (emphasis added), and does not use language such as "payment, not to exceed $15,000, on account of each instance of personal bodily injury." Furthermore, the trustee argues, § 522(d) distinguishes exempted property from non-exempted property by type and not number. While certain subsections do refer to "aggregate" interests (e.g., subsections (1) (real property), (3) (household furnishings), and (4) (jewelry)) and subsection (2) does limit the exemption to "one" motor vehicle, the trustee notes that it is easy to see how Congress anticipated multiple properties and so multiple claims in these areas but did not do so in the context of personal bodily injuries. Finally, the trustee argues that Christo's reading of the statute would result in inequity because it would treat similarly situated debtors differently.
 
 
 7
 The BAP agreed with the trustee's interpretation in an opinion examining text, context, and legislative history. We affirm, largely adopt the BAP's opinion, and outline briefly our reasons. First, the language of the exemption in 11 U.S.C. § 522(d)(11)(D) refers to "a payment." While there is some ambiguity, the more natural reading is that there is a single exemption. Second, the overall scheme of exemptions in § 522(d)(11) displays a pattern of allowing one exemption per category. Third, the purpose of exemptions is to provide support for the debtors at a reasonably necessary level. The reasonably necessary level should not, logically, vary to provide more in total exemption amount to someone who is in three minor accidents than one who is in a single catastrophic accident. That is particularly so given that there are the exemptions in §§ 522(d)(10)(A) and (C) for social security and disability benefits. That is, the exemption for "a payment in account of personal bodily injury" is not a proxy for degree of disability. Fourth, the reading of the exemption as limited to one $15,000 exemption more equitably treats similarly situated debtors.
 
 
 8
 As the BAP states, "[t]he purpose of the statute . . . is served by limiting it to one exemption, regardless of the number of incidents of bodily injury, because the determination of what is 'reasonably necessary' to support the debtor should not hinge on the number of injuries suffered." Christo, 228 B.R. at 52-53. If the statute were read as Christo suggests, Debtor A who sustained a single $45,000 personal injury would receive only a $15,000 exemption, while Debtor B who sustained three separate injuries of $15,000 each, totaling $45,000, would receive a $45,000 exemption. The "value" of the personal injury claims to Debtors A and B would be the same but the exemptions allowed to each of them would be wildly different. Certainly it is possible that multiple incidents of personal bodily injuries might be more severe, and require more support, than a single incident, but, as the BAP pointed out, see id. at 53, that will not necessarily be so. More importantly, "Congress set a cap of $15,000.00 to be exempted on account of bodily injury, and there is no indication that amount should be multiplied depending on an individual debtor's situation." Id.
 
 
 9
 Though we acknowledge the default rule that courts should construe the Bankruptcy Code's exemptions "liberally to reflect their remedial purposes," In re Caron, 82 F.3d 7, 10 (1st Cir. 1996), we also recognize that, in certain situations, there are reasons "to afford a more narrow reading," id. In other words, a text's possible ambiguity does not preclude further inquiry into which interpretation better coincides with the Code's purposes. Such an inquiry might include reviewing a particular provision's legislative history (as in Caron) or logic. This evaluation may confirm a construction that is in a debtor's favor. There are times, however, when, as here, a contrary conclusion is warranted.
 
 
 10
 We agree with the BAP "that the phrase 'on account of personal bodily injury' should be interpreted as defining the nature of the payment that is exempt and not the number of injuries suffered." Id. at 53. Consequently, a Chapter 7 debtor is entitled to one exemption of no more than $15,000 on account of personal injury, regardless of the number of injuries involved. We affirm.
 
 
 
 Notes:
 
 
 *
 Of the Eighth Circuit, sitting by designation.
 
 
 [1]
 The amount of the exemption allowed under § 522(d)(11)(D) has since been increased to $16,150 to reflect the change in the Consumer Price Index for All Urban Consumers. See generally 11 U.S.C. § 104(b)(1). This case, however, is governed by the earlier amount. See 11 U.S.C. § 104(b)(3).
 
 
 
 11
 JOHN R. GIBSON, Senior Circuit Judge, dissenting.
 
 
 12
 I respectfully dissent. It is by no means clear that Congress meant section 522(d)(11)(D) to exempt only one payment on account of bodily injury and we should resolve the ambiguity in favor of allowing exemptions, not excluding them.
 
 
 13
 The Bankruptcy Appellate Panel relied on a case interpreting a distinguishable Illinois statute, In re Rhodes, 147 B.R. 443 (Bankr. N.D. Ill. 1992), and rejected the case interpreting section 522(d)(11)(D), In re Marcus, 172 B.R. 502 (Bankr. D. Conn. 1994), which I consider to be better reasoned and more on point.
 
 
 14
 The BAP prefaced its opinion with the observation that courts have found section 522(d)(11)(D) ambiguous and difficult to interpret. In re Christo, 228 B.R. 48, 50 (B.A.P. 1st Cir. 1999) (citing In re Gregoire, 210 B.R. 432, 436 (Bankr. D.R.I. 1997) and In re Bova, 205 B.R. 467, 476 (Bankr. E.D. Pa. 1997)). The BAP also repeated the familiar principle that exemptions should be construed liberally in favor of the debtor. In re Christo, 228 B.R. at 50.
 
 
 15
 The BAP then discussed the Rhodes case, which applied an Illinois statute similar to section 522(d)(11)(D), but which included pain and suffering in the personal injury exemption, unlike the federal statute. Rhodes stated that it would be unjust to interpret the statute to allow separate exemptions for separate accidents, because "the number of incidents suffered by a debtor has no bearing on the debtor's need for funds, and therefore should not affect the exemption allowed." In re Christo, 228 B.R. at 51.
 
 
 16
 The Rhodes decision used some four canons of construction employed by the Illinois Supreme Court. 147 B.R. at 445-46. Some of these canons may to an extent be recognized in federal cases, but I reject the conclusion that they dictate our interpretation of this statute. Rhodes also referred to the fact that the statutory list of exemptions distinguishes between exempted and unexempted property by its nature and not number. 147 B.R. at 446. This proves little, however, as those subparagraphs in the federal statute enumerating property which may be aggregated list either groupings of types of property such as household furnishings, section 522(d)(3), professional books or tools, section 522(d)(6), or certain enumerated property interest in life insurance contracts, section 522(d)(8).
 
 
 17
 In my view, the BAP's opinion rests on a shaky policy foundation and ignores language in the statute that would allow separate exemptions for separate bodily injury claims.
 
 
 18
 After discussing the Rhodes and Marcus, the BAP considers the legislative history. 228 B.R. at 51-52. This discussion, while pointing to the purposes of the exemptions, fails to illuminate the issue before us, whether one or more than one exemption is applicable when a debtor has been unfortunate enough to be involved in two personal injury accidents.
 
 
 19
 The BAP opinion also demonstrates the tenuous if not speculative reasoning on which it is based. In its grammatical analysis, the panel reasons that the article "a" along with the singular form of "payment" "would seem to" indicate that Congress intended the exemption of a single payment. 228 B.R. at 51. I think it equally plausible that the term "a payment on . . . account of personal bodily injury" can be applied to each such payment.
 
 
 20
 In discussing the various subsections referring to aggregate interests, the BAP reasons, "Congress likely did not anticipate a situation . . . involving multiple incidents of bodily injury." Id. (emphasis added). In referring to subsection (d) (2) limiting the exemption to one motor vehicle, the BAP reasoned, "[I]t is easy to see how Congress could have anticipated a debtor owning more than one car." Id. It is evident that the BAP has not attempted to ascertain the intent of Congress, but has simply articulated in the "likely did not anticipate" and "easy to see" phrases support for what is at base little more than speculation as to what Congress might have anticipated. In essence, it is a policy conclusion as to what is best, and in reality, judicial legislation.
 
 
 21
 Section 522(d) lists some twenty types of exemptions in paragraphs and subparagraphs. Six of those paragraphs limit the exemption granted to "the debtor's aggregate interest . . . in . . . [various types of property]." 11 U.S.C. §§ 522(d)(1), (3), (4), (5), (6) and (8) (emphasis added). Another paragraph limits the number of motor vehicles that may be exempted (i.e., one). Section 522(d)(2). In contrast, section 522(d)(11)(D) contains no requirement to aggregate and no numerical limitation. This contrast on its face is evidence that Congress chose not to aggregate all bodily injury exemptions. See Marcus, 172 B.R. at 504; In re Anderson, 932 P.2d 1110, 1114 (Okla. 1996) (interpreting similar Oklahoma exemption). However, the BAP explained this discrepancy away, saying that the other sections were categories in which Congress would have expected a debtor to have more than one item, whereas it is unusual for a debtor to have more than one separate claim for bodily injury. 228 B.R. at 51. I believe this is resolving an ambiguity against the debtor, rather than in the debtor's favor.
 
 
 22
 The statute simply does not say whether "a payment . . . on account of personal bodily injury" refers to one or more than one such payment. Congress could have specifically stated which of the two meanings it intended, as it did with motor vehicles, and as it did by the use of the word "aggregate." I can only read the failure to use these restrictive terms as demonstrating an intent from the plain language of the statute that there is no such limitation and more than one such incident may be the subject of exemption.
 
 
 23
 The legislative history is of no assistance in dealing with this ambiguity. In such circumstances, we should construe the exemption liberally in favor of the debtor. See In re Arrol, 170 F.3d 934, 937 (9th Cir. 1999) (citing strong policy of federal bankruptcy law to interpret exemptions liberally in favor of debtor); In re Parrotte, 22 F.3d 472, 474 (2d Cir. 1994) (Vermont exemption statutes are remedial and receive liberal construction in favor of debtor); Caron v. Farmington Nat'l Bank, 82 F.3d 7, 10 (1st Cir. 1996) (recognizing general rule of liberal interpretation of exemptions).
 
 
 24
 When the BAP moves on from the language of the statute to policy, it again resolves doubt against the debtor. The BAP states: "While one might argue that a debtor who has suffered more than one incident of bodily injury will require more support than a debtor who has suffered only one, this would not necessarily be the case." 228 B.R. at 53. While it might not necessarily be the case, as the BAP speculates, it might also be more costly to be injured three times than once. In this case, there are allegations of three separate accidents producing separate injuries, the net result of which is that the debtor claims to be completely disabled from self-support. Permitting separate exemptions for each injury is consistent with the statutory language and is not an irrational result.
 
 
 25
 Admittedly, the debtor who suffers multiple incidents of bodily injury presents a circumstance of greater rarity than the debtor who suffers from one, or who owns more than one car. The only limitation that Congress chose to place on the exemption was first $7,500, and later with amendment $15,000. It is evident that Congress knew how to limit the exemption with respect either to numbers or aggregates in addition to the monetary limit. That such was not done permits only the interpretation that if the rare situation occurs where there is more than one personal bodily injury, there will be more than one exemption allowed.
 
 
 26
 A debtor having more than one bodily injury claim is an unusual situation, but I think the language of the statute must be read to provide that each such incident is exempted. After all of this discussion, perhaps the most telling consideration is the well-established rule that exemptions must be construed liberally in favor of the debtor.
 
 
 27
 Accordingly, I dissent from the affirmance of the BAP's decision by this court.