<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 99-9002

                     IN RE: LEE C. CHRISTO,

                           Debtor.
                                
                     ____________________

                       LEE C. CHRISTO,

                           Appellant,

                               v.

                      JONATHAN D. YELLIN,
                      Chapter 7 Trustee,

                           Appellee.

                                 
                      ____________________

                
           APPEAL FROM THE BANKRUPTCY APPELLATE PANEL

                      OF THE FIRST CIRCUIT

 [Hon. Goodman, Lamoutte, and de Jess, U.S. Bankruptcy Judges]

                      ____________________
                     
                             Before

                    Stahl, Circuit Judge,
            John R. Gibson, Senior Circuit Judge,
                  and Lynch, Circuit Judge.
                      ____________________
                     

 Carl E. D'Angio, Jr. on brief for appellant.
 Jonathan D. Yellin, Craig J. Ziady, and Riemer &
Braunstein LLP on brief for appellee.

                      ____________________
                     
                       October 4, 1999
                      ____________________

 LYNCH, Circuit Judge. The question presented is whether
a debtor under Chapter 7 of the Bankruptcy Code may claim more than
$15,000 in exemption for payment received on account of personal
bodily injury under 11 U.S.C.  522(d)(11)(D). We hold that a
debtor may not.
 Lee C. Christo filed a voluntary petition for bankruptcy
under Chapter 7 of the Bankruptcy Code on January 22, 1997. In her
Schedule C, she claimed three exemptions for three personal injury
claims stemming from three separate pre-petition accidents.
Christo's personal injury claims had not yet been settled; she
sought potential exemptions of $15,000 for each of the three
personal injury claims, for a total potential exemption of $45,000.
The trustee filed a "Limited Objection to Claim of Exemption" with
respect to the three tort claims on the grounds that no value was
listed. The bankruptcy court sustained the objection, continued the
matter generally, and directed Christo to file amended schedules of
exemptions. Christo then filed a "Motion for Determination of
Validity of Exemptions and Consequent Denial of Trustee's Limited
Objection to Claims of Exemption." In response, the trustee argued
that, under 11 U.S.C.  522(d)(11)(D), Christo was entitled only to
a total exemption of $15,000 for all her personal injury claims.
The Bankruptcy Court found for the trustee, and the Bankruptcy
Appellate Panel (BAP) affirmed. See In re Christo, 228 B.R. 48, 53
(B.A.P. 1st Cir. 1999).  
 The interpretation of  522(d)(11)(D) of the Bankruptcy
Code is a legal question, which we review de novo. See In re
Lamanna, 153 F.3d 1, 3 (1st Cir. 1998). Section 522(d)(11)(D) of
the Code states:  
   d) The following property may be exempted under
 subsection (b)(1) of this section: . . . (11) The
 debtor's right to receive, or property that is traceable
 to-- . . . (D) a payment, not to exceed $15,000, on
 account of personal bodily injury, not including pain and
 suffering or compensation for actual pecuniary loss, of
 the debtor or an individual of whom the debtor is a
 dependent . . . .

11 U.S.C.  522(d)(11)(D).
 Christo, relying on the arguments set forth in In re
Marcus, 172 B.R. 502 (Bankr. D. Conn. 1994), contends that a debtor
is entitled, under  522(d)(11)(D), to multiple exemptions for
personal injury judgments or settlements. See also In re Anderson,
932 P.2d 1110, 1113-14 (Okla. 1996) (relying on Marcus to interpret
an analogous provision of the Oklahoma Code). She argues that
522(d)(11)(D) is not plain on its face and, thus, should be
interpreted within the context of the entire exemption scheme of
522(d) and the legislative history of the statute. That scheme
and history, she argues, support a reading that permits as many
$15,000 exemptions as there are personal injury claims. She notes
that exemptions allowed under subsections (1), (3), (4), (5), (6),
and (8) of  522(d) all refer to the "aggregate" interest that may
be exempted, while subsection (11) does not. When Congress intended
to specify a limit to the total number of exemptions under a
specific category, she concludes, it made its view clear. Congress
made no such specification in subsection (11)(D) and, therefore,
none can be presumed. Christo also points to a note to the
precursor provision to  522(d)(11)(D) in the Report of the
Commission on the Bankruptcy Laws of the United States, H.R. Doc.
No. 93-137, 93rd Cong., 1st Sess. (1973), which states that the
value of personal injury exemptions "is not limited." Since the
House Report on the final bill did not explicitly reject this note,
she contends that we should adopt the Commission Report's view in
our interpretation of the statute. Finally, she points to the
policy of liberally construing exemptions in favor of the debtor.
 The trustee, espousing the view taken in In re Rhodes,
147 B.R. 443, 444-45 (Bankr. N.D. Ill. 1992) (interpreting an
analogous provision of the Illinois Code), argues that the language
of the statute is clear, the statutory scheme contradicts Christo's
claim, and that to hold otherwise would lead to nonsensical
results. The trustee points out that  522(d)(11)(D) refers to "a
payment, not to exceed $15,000, on account of personal bodily
injury," 11 U.S.C.  522(d)(11)(D) (emphasis added), and does not
use language such as "payment, not to exceed $15,000, on account of
each instance of personal bodily injury." Furthermore, the trustee
argues,  522(d) distinguishes exempted property from non-exempted
property by type and not number. While certain subsections do refer
to "aggregate" interests (e.g., subsections (1) (real property),
(3) (household furnishings), and (4) (jewelry)) and subsection (2)
does limit the exemption to "one" motor vehicle, the trustee notes
that it is easy to see how Congress anticipated multiple properties
and so multiple claims in these areas but did not do so in the
context of personal bodily injuries. Finally, the trustee argues
that Christo's reading of the statute would result in inequity
because it would treat similarly situated debtors differently.
 The BAP agreed with the trustee's interpretation in an
opinion examining text, context, and legislative history. We
affirm, largely adopt the BAP's opinion, and outline briefly our
reasons. First, the language of the exemption in 11 U.S.C.
522(d)(11)(D) refers to "a payment." While there is some
ambiguity, the more natural reading is that there is a single
exemption. Second, the overall scheme of exemptions in  522(d)(11)
displays a pattern of allowing one exemption per category. Third,
the purpose of exemptions is to provide support for the debtors at
a reasonably necessary level. The reasonably necessary level should
not, logically, vary to provide more in total exemption amount to
someone who is in three minor accidents than one who is in a single
catastrophic accident. That is particularly so given that there are
the exemptions in  522(d)(10)(A) and (C) for social security and
disability benefits. That is, the exemption for "a payment in
account of personal bodily injury" is not a proxy for degree of
disability. Fourth, the reading of the exemption as limited to one
$15,000 exemption more equitably treats similarly situated debtors.
 As the BAP states, "[t]he purpose of the statute . . . is
served by limiting it to one exemption, regardless of the number of
incidents of bodily injury, because the determination of what is
'reasonably necessary' to support the debtor should not hinge on
the number of injuries suffered." Christo, 228 B.R. at 52-53. If
the statute were read as Christo suggests, Debtor A who sustained
a single $45,000 personal injury would receive only a $15,000
exemption, while Debtor B who sustained three separate injuries of
$15,000 each, totaling $45,000, would receive a $45,000 exemption.
The "value" of the personal injury claims to Debtors A and B would
be the same but the exemptions allowed to each of them would be
wildly different. Certainly it is possible that multiple incidents
of personal bodily injuries might be more severe, and require more
support, than a single incident, but, as the BAP pointed out, see
id. at 53, that will not necessarily be so. More importantly,
"Congress set a cap of $15,000.00 to be exempted on account of
bodily injury, and there is no indication that amount should be
multiplied depending on an individual debtor's situation." Id.
 Though we acknowledge the default rule that courts should
construe the Bankruptcy Code's exemptions "liberally to reflect
their remedial purposes," In re Caron, 82 F.3d 7, 10 (1st Cir.
1996), we also recognize that, in certain situations, there are
reasons "to afford a more narrow reading," id. In other words, a
text's possible ambiguity does not preclude further inquiry into
which interpretation better coincides with the Code's purposes.
Such an inquiry might include reviewing a particular provision's
legislative history (as in Caron) or logic. This evaluation may
confirm a construction that is in a debtor's favor. There are
times, however, when, as here, a contrary conclusion is warranted.
 We agree with the BAP "that the phrase 'on account of
personal bodily injury' should be interpreted as defining the
nature of the payment that is exempt and not the number of injuries
suffered." Id. at 53. Consequently, a Chapter 7 debtor is entitled
to one exemption of no more than $15,000 on account of personal
injury, regardless of the number of injuries involved. We affirm.

                     - Dissent Follows -

 JOHN R. GIBSON, Senior Circuit Judge, dissenting. I
respectfully dissent. It is by no means clear that Congress meant
section 522(d)(11)(D) to exempt only one payment on account of
bodily injury and we should resolve the ambiguity in favor of
allowing exemptions, not excluding them.
 The Bankruptcy Appellate Panel relied on a case
interpreting a distinguishable Illinois statute, In re Rhodes, 147
B.R. 443 (Bankr. N.D. Ill. 1992), and rejected the case
interpreting section 522(d)(11)(D), In re Marcus, 172 B.R. 502
(Bankr. D. Conn. 1994), which I consider to be better reasoned and
more on point.  
 The BAP prefaced its opinion with the observation that
courts have found section 522(d)(11)(D) ambiguous and difficult to
interpret. In re Christo, 228 B.R. 48, 50 (B.A.P. 1st Cir. 1999)
(citing In re Gregoire, 210 B.R. 432, 436 (Bankr. D.R.I. 1997) and
In re Bova, 205 B.R. 467, 476 (Bankr. E.D. Pa. 1997)). The BAP also
repeated the familiar principle that exemptions should be construed
liberally in favor of the debtor. In re Christo, 228 B.R. at 50.
 The BAP then discussed the Rhodes case, which applied an
Illinois statute similar to section 522(d)(11)(D), but which
included pain and suffering in the personal injury exemption,
unlike the federal statute. Rhodes stated that it would be unjust
to interpret the statute to allow separate exemptions for separate
accidents, because "the number of incidents suffered by a debtor
has no bearing on the debtor's need for funds, and therefore should
not affect the exemption allowed." In re Christo, 228 B.R. at 51.
 The Rhodes decision used some four canons of construction
employed by the Illinois Supreme Court. 147 B.R. at 445-46. Some of
these canons may to an extent be recognized in federal cases, but
I reject the conclusion that they dictate our interpretation of
this statute. Rhodes also referred to the fact that the statutory
list of exemptions distinguishes between exempted and unexempted
property by its nature and not number. 147 B.R. at 446. This proves
little, however, as those subparagraphs in the federal statute
enumerating property which may be aggregated list either groupings
of types of property such as household furnishings, section
522(d)(3), professional books or tools, section 522(d)(6), or
certain enumerated property interest in life insurance contracts,
section 522(d)(8).
 In my view, the BAP's opinion rests on a shaky policy
foundation and ignores language in the statute that would allow
separate exemptions for separate bodily injury claims.
 After discussing the Rhodes and Marcus, the BAP considers
the legislative history. 228 B.R. at 51-52. This discussion, while
pointing to the purposes of the exemptions, fails to illuminate the
issue before us, whether one or more than one exemption is
applicable when a debtor has been unfortunate enough to be involved
in two personal injury accidents.
 The BAP opinion also demonstrates the tenuous if not
speculative reasoning on which it is based. In its grammatical
analysis, the panel reasons that the article "a" along with the
singular form of "payment" "would seem to" indicate that Congress
intended the exemption of a single payment. 228 B.R. at 51. I think
it equally plausible that the term "a payment on . . . account of
personal bodily injury" can be applied to each such payment.  
 In discussing the various subsections referring to
aggregate interests, the BAP reasons, "Congress likely did not
anticipate a situation . . . involving multiple incidents of bodily
injury." Id. (emphasis added). In referring to subsection (d) (2)
limiting the exemption to one motor vehicle, the BAP reasoned,
"[I]t is easy to see how Congress could have anticipated a debtor
owning more than one car." Id. It is evident that the BAP has not
attempted to ascertain the intent of Congress, but has simply
articulated in the "likely did not anticipate" and "easy to see"
phrases support for what is at base little more than speculation as
to what Congress might have anticipated. In essence, it is a policy
conclusion as to what is best, and in reality, judicial
legislation.
 Section 522(d) lists some twenty types of exemptions in
paragraphs and subparagraphs. Six of those paragraphs limit the
exemption granted to "the debtor's aggregate interest . . . in
. . . [various types of property]." 11 U.S.C.  522(d)(1), (3),
(4), (5), (6) and (8) (emphasis added). Another paragraph limits
the number of motor vehicles that may be exempted (i.e., one).
Section 522(d)(2). In contrast, section 522(d)(11)(D) contains no
requirement to aggregate and no numerical limitation. This contrast
on its face is evidence that Congress chose not to aggregate all
bodily injury exemptions. See Marcus, 172 B.R. at 504; In re
Anderson, 932 P.2d 1110, 1114 (Okla. 1996) (interpreting similar
Oklahoma exemption). However, the BAP explained this discrepancy
away, saying that the other sections were categories in which
Congress would have expected a debtor to have more than one item,
whereas it is unusual for a debtor to have more than one separate
claim for bodily injury. 228 B.R. at 51. I believe this is
resolving an ambiguity against the debtor, rather than in the
debtor's favor.
 The statute simply does not say whether "a payment . . .
on account of personal bodily injury" refers to one or more than
one such payment. Congress could have specifically stated which of
the two meanings it intended, as it did with motor vehicles, and as
it did by the use of the word "aggregate." I can only read the
failure to use these restrictive terms as demonstrating an intent
from the plain language of the statute that there is no such
limitation and more than one such incident may be the subject of
exemption.
 The legislative history is of no assistance in dealing
with this ambiguity. In such circumstances, we should construe the
exemption liberally in favor of the debtor. See In re Arrol, 170
F.3d 934, 937 (9th Cir. 1999) (citing strong policy of federal
bankruptcy law to interpret exemptions liberally in favor of
debtor); In re Parrotte, 22 F.3d 472, 474 (2d Cir. 1994) (Vermont
exemption statutes are remedial and receive liberal construction in
favor of debtor); Caron v. Farmington Nat'l Bank, 82 F.3d 7, 10
(1st Cir. 1996) (recognizing general rule of liberal interpretation
of exemptions).
 When the BAP moves on from the language of the statute to
policy, it again resolves doubt against the debtor. The BAP states:
"While one might argue that a debtor who has suffered more than one
incident of bodily injury will require more support than a debtor
who has suffered only one, this would not necessarily be the case."
228 B.R. at 53. While it might not necessarily be the case, as the
BAP speculates, it might also be more costly to be injured three
times than once. In this case, there are allegations of three
separate accidents producing separate injuries, the net result of
which is that the debtor claims to be completely disabled from
self-support. Permitting separate exemptions for each injury is
consistent with the statutory language and is not an irrational
result.
 Admittedly, the debtor who suffers multiple incidents of
bodily injury presents a circumstance of greater rarity than the
debtor who suffers from one, or who owns more than one car. The
only limitation that Congress chose to place on the exemption was
first $7,500, and later with amendment $15,000. It is evident that
Congress knew how to limit the exemption with respect either to
numbers or aggregates in addition to the monetary limit. That such
was not done permits only the interpretation that if the rare
situation occurs where there is more than one personal bodily
injury, there will be more than one exemption allowed.
 A debtor having more than one bodily injury claim is an
unusual situation, but I think the language of the statute must be
read to provide that each such incident is exempted. After all of
this discussion, perhaps the most telling consideration is the
well-established rule that exemptions must be construed liberally
in favor of the debtor.
 Accordingly, I dissent from the affirmance of the BAP's
decision by this court.

</body>

</html>