JOHN R. GIBSON, Senior Circuit Judge,
dissenting.
I respectfully dissent. It is by no means clear that Congress meant section 522(d)(ll)(D) to exempt only one payment on account of bodily injury and we should resolve the ambiguity in favor of allowing exemptions, not excluding them.
The Bankruptcy Appellate Panel relied on a ease interpreting a distinguishable Illinois statute, In re Rhodes, 147 B.R. 443 (Bankr.N.D.Ill.1992), and rejected the case interpreting section 522(d)(11)(D), In re Marcus, 172 B.R. 502 (Bankr.D.Conn.1994), which I consider to be better reasoned and more on point.
The BAP prefaced its opinion with the observation that courts have found section 522(d)(11)(D) ambiguous and difficult to interpret. In re Christo, 228 B.R. 48, 50 (1st Cir. BAP 1999) (citing In re Gregoire, 210 B.R. 432, 436 (Bankr.D.R.I.1997) and In re Bova, 205 B.R. 467, 476 (Bankr.E.D.Pa.1997)). The BAP also repeated the familiar principle that exemptions should be construed liberally in favor of the debtor. In re Christo, 228 B.R. at 50.
The BAP then discussed the Rhodes case, which applied an Illinois statute similar to section 522(d)(11)(D), but which included pain and suffering in the personal injury exemption, unlike the federal statute. Rhodes stated that it would be unjust to interpret the statute to allow separate exemptions for separate accidents, because “the number of incidents suffered by a debtor has no bearing on the debtor’s need for funds, and therefore should not affect the exemption allowed.” In re Christo, 228 B.R. at 51.
The Rhodes decision used some four canons of construction employed by the *40 Illinois Supreme Court. 147 B.R. at 445-46. Some of these canons may to an extent be recognized in federal cases, but I reject the conclusion that they dictate our interpretation of this statute. Rhodes also referred to the fact that the statutory list of exemptions distinguishes between exempted and unexempted property by its nature and not number. 147 B.R. at 446. This proves little, however, as those sub-paragraphs in the federal statute enumerating property which may be aggregated list either groupings of types of property such as household furnishings, section 522(d)(3), professional books or tools, section 522(d)(6), or certain enumerated property interest in life insurance contracts, section 522(d)(8).
In my view, the BAP’s opinion rests on a shaky policy foundation and ignores language in the statute that would allow separate exemptions for separate bodily injury claims.
After discussing Rhodes and Marcus, the BAP considers the legislative history. 228 B.R. at 51-52. This discussion, while pointing to the purposes of the exemptions, fails to illuminate the issue before us, whether one or more than one exemption is applicable when a debtor has been unfortunate enough to be involved in two personal injury accidents.
The BAP opinion also demonstrates the tenuous if not speculative reasoning on which it is based. In its grammatical analysis, the panel reasons that the article “a” along with the singular form of “payment” “would seem to” indicate that Congress intended the exemption of a single payment. 228 B.R. at 51. I think it equally plausible that the term “a payment on ... account of personal bodily injury” can be applied to each such payment.
In discussing the various subsections referring to aggregate interests, the BAP reasons, “Congress likely did not anticipate a situation ... involving multiple incidents of bodily injury.” Id. (emphasis added). In referring to subsection (d)(2) limiting the exemption to one motor vehicle, the BAP reasoned, “[I]t is easy to see how Congress could have anticipated a debtor owning more than one car.” Id. It is evident that the BAP has not attempted to ascertain the intent of Congress, but has simply articulated in the “likely did not anticipate” and “easy to see” phrases support for what is at base little more than speculation as to what Congress might have anticipated. In essence, it is a policy conclusion as to what is best, and in reality, judicial legislation.
Section 522(d) lists some twenty types of exemptions in paragraphs and subpara-graphs. Six of those paragraphs limit the exemption granted to “the debtor’s aggregate interest ... in ... [various types of property].” 11 U.S.C. §§ 522(d)(1), (3), (4), (5), (6) and (8) (emphasis added). Another paragraph limits the number of motor vehicles that may be exempted (i.e., one). Section 522(d)(2). In contrast, section 522(d)(11)(D) contains no requirement to aggregate and no numerical limitation. This contrast on its face is evidence that Congress chose not to aggregate all bodily injury exemptions. See Marcus, 172 B.R. at 504; In re Anderson, 932 P.2d 1110, 1114 (Okla.1996) (interpreting similar Oklahoma exemption). However, the BAP explained this discrepancy away, saying that the other sections were categories in which Congress would have expected a debtor to have more than one item, whereas it is unusual for a debtor to have more than one separate claim for bodily injury. 228 B.R. at 51. I believe this is resolving an ambiguity against the debtor, rather than in the debtor’s favor.
The statute simply does not say whether “a payment ... on account of personal bodily injury” refers to one or more than one such payment. Congress could have specifically stated which of the two meanings it intended, as it did with motor vehicles, and as it did by the use of the word “aggregate.” I can only read the failure to use these restrictive terms as demonstrating an intent from the plain language of *41 the statute that there is no such limitation and more than one such incident may be the subject of exemption.
The legislative history is of no assistance in dealing with this ambiguity. In such circumstances, we should construe the exemption liberally in favor of the debtor. See In re Arrol, 170 F.3d 934, 937 (9th Cir.1999) (citing strong policy of federal bankruptcy law to interpret exemptions liberally in favor of debtor); In re Parrotte, 22 F.3d 472, 474 (2d Cir.1994) (Vermont exemption statutes are remedial and receive liberal construction in favor of debtor); Caron v. Farmington Nat’l Bank, 82 F.3d 7, 10 (1st Cir.1996) (recognizing general rule of liberal interpretation of exemptions).
When the BAP moves on from the language of the statute to policy, it again resolves doubt against the debtor. The BAP states: “While one might argue that a debtor who has suffered more than one incident of bodily injury will require more support than a debtor who has suffered only one, this would not necessarily be the case.” 228 B.R. at 53. While it might not necessarily be the case, as the BAP speculates, it might also be more costly to be injured three times than once. In this case, there are allegations of three separate accidents producing separate injuries, the net result of which is that the debtor claims to be completely disabled from self-support. Permitting separate exemptions for each injury is consistent with the statutory language and is not an irrational result.
Admittedly, the debtor who suffers multiple incidents of bodily injury presents a circumstance of greater rarity than the debtor who suffers from one, or who owns more than one car. The only limitation that Congress chose to place on the exemption was first $7,500, and later with amendment $15,000. It is evident that Congress knew how to limit the exemption with respect either to numbers or aggregates in addition to the monetary limit. That such was not done permits only the interpretation that if the rare situation occurs where there is more than one personal bodily injury, there will be more than one exemption allowed.
A debtor having more than one bodily injury claim is an unusual situation, but I think the language of the statute must be read to provide that each such incident is exempted. After all of this discussion, perhaps the most telling consideration is the well-established rule that exemptions must be construed liberally in favor of the debtor.
Accordingly, I dissent from the affir-mance of the BAP’s decision by this court.